| | |
|---|---|
| MARY MCGALLOWAY, Individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>v.<br><br>DEBT RESOLUTION DIRECT, LLC, d/b/a DEBT ADVISORS OF AMERICA,<br><br>        Defendant. | Case No.: 20-cv-1740<br><br>**FIRST AMENDED<br>CLASS ACTION COMPLAINT**<br><br>Hon. Stephen C. Dries |

## INTRODUCTION

1. This class action seeks redress for consumer practices that violate the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* (the "FCRA") and the Wisconsin Consumer Act, Ch. 421-427, Wis. Stats. (the "WCA"). Specifically, Defendant wrongfully obtained the credit reports of Plaintiff and a class of similarly situated individuals.

## JURISDICTION AND VENUE

2. The Court has federal question jurisdiction because this action is brought to enforce the federal Consumer Credit Protection Act, Pub. L. 90-321, as amended. Venue in this District is proper in that Defendant directed its solicitations toward consumers in this District.

## PARTIES

3. Plaintiff Mary McGalloway is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is also a "consumer" as defined in FCRA, 15 U.S.C. § 1681a, in that Plaintiff is a natural person who has sought or acquired real or personal property, services, money, or credit for personal, family, or household purposes.

5. Plaintiff is a "customer" as defined in the WCA, Wis. Stat. § 421.301(17), in that Plaintiff is a natural person who has sought or acquired real or personal property, services, money, or credit for personal, family, or household purposes.

6. Plaintiff is also a "buyer" as defined in the WCA, § 422.501, in that Plaintiff is a natural person or customer who is solicited to purchase or who purchases the services of a credit services organization.

7. Defendant Debt Resolution Direct, LLC ("DRD") is a foreign limited liability company with its principal offices located at 6863 Friars Road, Suite 101, San Diego, CA 92108, which has registered a trademark for doing business under the name "Debt Advisors of America."

8. DRD's website has an "About Us" page, which states, in part:

> Debt Advisors of America is a U.S. company headquartered in San Diego, California. For many years we have helped thousands of clients eliminate, **in total**, millions of dollars in debt. Debt Advisors of America is a member of the American Fair Credit Council; the International Association of Professional Debt Arbitrators; and the Better Business Bureau, with which Debt Advisors of America maintains an A+ rating.
>
> Debt Advisors of America team members have, together, decades of experience in the debt-restructure industry. Debt Advisors of America's team members maintain accreditation from the International Association of Professional Debt Arbitrators.
>
> We are committed to helping clients and conducting our business honestly, ethically, and professionally.

9. DRD is engaged in the business of a consumer "creditor," "merchant," and "lender" as those terms are defined in Wis. Stat. § 421.301, directly and indirectly using the

2

mails and telephone to extend credit to consumers through various debt restructuring or settlement programs.

10. DRD's website explains that, Debt Restructure is the consumer's "Best Option" because although debt restructure "could adversely affect your credit worthiness," bankruptcy will result in "significant, long-term damage to credit" and continuing to make minimum payments also "can hurt your credit over time":



**Debt Restructure (Best Option)**

ebt Restructure, or Debt Negotiation, as it is sometime eferred to, is the process of negotiating with a creditor r debt collector to pay less than the full amount owed. By paying less than the full balance you owe on an ccount to satisfy the debt, you are able to become debt free in a shorter period of time.

**Pros**

o Skilled strategists and negotiators are working on your behalf
o Provide immediate payment relief
o Be free of enrolled debt in under 4 years

**Cons**

Prevents the use of enrolled credit cards
Could adversely affect your credit worthiness
May temporarily increase the amount owed due to the accrual of fees and interest



**Bankruptcy**

A legal process. All your assets are evaluated and used to pay off your debts. Chapter 7 and Chapter 13 are most common options used by individuals. Once bankruptcy is complete, you are relieved of the debt obligations you had before filing bankruptcy.

**Pros**

o Debt obligation could be cleared
o Creditors are barred from attempting to collect on debts
o Process takes only 3-6 months

**Cons**

o Significant, long-term damage to credit
o Loss of all credit cards
o Chapter 7 difficult to qualify for



**Minimum Payments**

Making the minimum payments on your credit cards is a strategy that merely prolongs your debt. Minimum payments should only be used as a temporary strategy to pay off your credit card debt.

**Pros**

o Consistent monthly payments
o Gradually reducing debt
o No negative impact on your credit

**Cons**

o High monthly payments
o High-interest rates
o High levels of debt can hurt your credit over time
o Very long pay off time frame
o Could pay 2 to 3 times the amount originally charged

11. DRD's Debt Restructure program also provides consumers with "immediate payment relief" by offering to engage creditors temporary debt forbearance or options to pay-over-time.

3

12. DRD is engaged in the business of a "credit services organization" in that the debt restructuring services that DRD offers in exchange for payment of money or other valuable consideration include: (i) improving a buyer's credit record, credit history or credit rating, (ii) arranging for or obtaining an extension of credit for a buyer, or (iii) providing advice or assistance to a buyer with regard to improving a buyer's credit record, credit history, or credit rating and arranging for or obtaining an extension of credit for a buyer.

13. DRD is engaged in a fraudulent scheme to obtain and use protected consumer data to market debt restructuring services to consumers.

14. DRD maintains substantial contacts with the State of Wisconsin and offers its debt restructuring or settlement services to consumers in Wisconsin, including Plaintiff.

**FACTS**

15. On or about July 30, 2020, DRD mailed or caused to be mailed a letter to Plaintiff. A copy of this letter is attached to this complaint as Exhibit A.

16. Upon information and belief, Exhibit A is a form letter, used by DRD for marketing purposes.

17. Exhibit A purports to be from a "Negotiations Department" but otherwise does not identify its sender.

18. Exhibit A provides a phone number and states that the recipient should call the sender "regarding the adjustments of your credit accounts" because "making your minimum payment will likely result in interest accruing on your unsecured credit balances at an unreasonable rate."

4

19. Exhibit A also provides a "PROGRAM EXAMPLE":

**PROGRAM EXAMPLE**
Est. Creditor Balances: $17,500.00
Est. Settlement Amount: $7,875.00
Proposed Program Payment: $218.75
Program Terms: 12-36 Months

20. Plaintiff received and reviewed Exhibit A, and was confused by it.

21. Representatives for Plaintiff called the phone number provided in Exhibit A.

22. The call was answered by a person who identified herself as a representative of "Consumer Services."

23. The representative of "Consumer Services" informed Plaintiff's representatives that "Consumer Services" works with several different companies and requested the "Notice Number" in Exhibit A to identify the sender of the letter.

24. After Plaintiff's representatives provided the "Notice Number" in the top-right corner of Exhibit A, the representative of "Consumer Services" identified the sender of Exhibit A as "Debt Advisors of America" and stated that DRD is a "member of the American Fair Credit Council."

25. The representative of "Consumer Services" also indicated that Plaintiff received Exhibit A because her account met certain criteria, including that Plaintiff had made minimum payments on credit accounts for several months but the balance of those accounts was not decreasing because of the accrual of interest at high rates.

26. Information about Plaintiff's credit history is not public information and Plaintiff did not authorize Defendant to obtain her credit history.

27. Upon information and belief, DRD obtained information about Plaintiff's credit history from pre-screened lists containing the names and addresses of consumers who met those criteria.

28. Pre-screened lists are compiled by consumer reporting agencies based on criteria that users of credit information supply.

29. Upon information and belief, Defendant compiled or directed an agent to compile a pre-screened list containing the names and addresses of consumers like Plaintiff.

30. These pre-screened lists are "consumer reports," more commonly referred to as "credit reports," under the FCRA.

31. With respect to pre-screened lists, the FCRA authorizes users of credit information to obtain credit reports only in connection with firm offers of credit or insurance.

32. Exhibit A is not a "firm offer" of credit or insurance. Indeed, Exhibit A expressly disclaims the possibility that the consumer might construe it as a firm offer, stating in part: "This is not an engagement offer, only an invitation to speak with a representative to determine interest and qualification."

33. Further, any firm offer of credit or insurance must be accompanied by a clear and conspicuous disclosure that the consumer was selected for the offer based on information obtained from a consumer reporting agency and that the consumer has the right to opt out of receiving firm offers of credit or insurance in the future.

34. The Bureau of Consumer Financial Protection ("CFPB") has issued implementing rules and regulations specifying how persons who obtain consumer reports for the purpose of making firm offers of credit or insurance should provide these disclosures. *See* 12 C.F.R. § 1022.54(c); *see also* 12 C.F.R. § 1022, Appx. D (model form).

35. There are no disclosures in <u>Exhibit A</u> that are substantially similar to the above-referenced disclosures.

36. Upon information and belief, Defendant certified to a consumer reporting agency or reseller of consumer reports that Defendant was obtaining the pre-screened list for the purposes of making firm offers of credit or insurance. *See* 15 U.S.C. § 1681e; *see also* 12 C.F.R. § 1022, Appendix N.

37. Defendant obtained consumer reports under false pretenses.

38. Defendant obtained consumer reports without a permissible purpose.

39. Defendant's website explains that, Debt Restructure is the consumer's "Best Option" because although debt restructure "could adversely affect your credit worthiness," bankruptcy will result in "significant, long-term damage to credit" and continuing to make minimum payments also "can hurt your credit over time."

40. Defendant's Debt Restructure program purports to provide consumers with "immediate payment relief" by offering to engage creditors' temporary debt forbearance or options to pay-over-time.

41. Defendant is engaged in the business of a "credit services organization" in that the debt restructuring services that DRD offers in exchange for payment of money or other valuable consideration include: (i) improving a buyer's credit record, credit history or credit rating, (ii) arranging for or obtaining an extension of credit for a buyer, or (iii) providing advice or assistance to a buyer with regard to improving a buyer's credit record, credit history, or credit rating and arranging for or obtaining an extension of credit for a buyer.

42. The "debt restructuring" plan that Defendant offers is effectively contacting creditors and negotiating a reduction or extended payment on behalf of the debtor for the

debtor's outstanding debt with that creditor and working with the debtor directly to set up a self-established budget and financial plan to assist the debtor in managing their finances, including making payments to creditors who have reduced their indebtedness or extended the time for payments.

43. Defendant is engaged in prorating debtors' income to their creditors.

44. Defendant is engaged in the business of an "Adjustment Service Company" as that term is defined in Wis. Stat. § 218.02(1)(a).

45. Upon information and belief, Defendant is not licensed as an "Adjustment Service Company" pursuant to Wis. Stat. § 218.02(1)(a) or Wis. Admin. Code Ch. DFI-Bkg. 73.

46. As of April 29, 2021, Defendant does not appear on the Wisconsin Department of Financial Institution's publically available list of licensed Adjustment Service Companies. *See* https://wdfi.org/fi/lfs/licensee_lists/Default.asp?Browse=ASC (last accessed April 29, 2021).

47. Upon information and belief, Defendant has not been issued a certificate of registration from the Wisconsin Department of Financial Institutions.

48. At all times relevant to this action, Defendant's conduct was knowing and willful.

### ***The FCRA***

49. The Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*, requires that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information in accordance with the requirements of the FCRA. 15 U.S.C. § 1681(b).

50. 15 U.S.C. § 1681b limits the circumstances under which a consumer reporting agency may furnish a consumer report, including when a person "intends to use the information

8

in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer."

51. 15 U.S.C. § 1681b(c) prohibits the furnishing of a consumer report in connection with any credit or insurance transaction that is not initiated by the consumer unless the transaction consists of a "firm offer of credit or insurance."

52. The Seventh Circuit has noted with approval that "the district courts of this circuit also have treated whether an offer is guaranteed as the *sine qua non* of a 'firm offer of credit.'" *Cole v. U.S. Capital, Inc.*, 389 F.3d 719, 727 n.8 (7th Cir. 2004).

53. 15 U.S.C. § 1681b(e) states that consumers may elect to be excluded from pre-screened lists and requires consumer reporting agencies to establish and maintain a notification system by which consumers are apprised of their right to be excluded from such lists and informed as to the procedures by which they may avail themselves of that right.

54. 15 U.S.C. § 1681b(f) states that a person shall not use or obtain a consumer report for any purpose unless the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section and the purpose is certified in accordance with 15 U.S.C. § 1681e by a prospective user of the report through a general or specific certification.

55. 15 U.S.C. § 1681e(a) requires that every consumer reporting agency shall maintain reasonable procedures to avoid violations of section 1681c and limit the furnishing of consumer reports to the purposes listed under section 1681b and require prospective users of the consumer's information identify themselves, certify the purposes for which the information is sought, and certify that the information will be used for no other purpose.

56. FCRA also requires that resellers of consumer reports also obtain certification respecting end user authorization. 15 USC 1681e(e); see 12 CFR 1022, Appendix N.

57. When consumer reporting agencies provide prescreened lists to creditors for the purpose of making firm offers of credit, they are reasonably relying on the users' express and implied certifications that the users of credit information will use that information only for permissible purposes and will provide all disclosures necessary to ensure that the consumer reporting agency's notification systems for apprising consumers of their rights to opt out of prescreened lists is effective.

58. 15 U.S.C. § 1681q states that "any person who knowingly and willfully obtains information on a consumer from a consumer reporting agency under false pretenses shall be fined under title 18, imprisoned for not more than 2 years, or both."

59. Pursuant to FCRA, any person who fails to comply with any requirement imposed under FCRA is liable to that consumer for actual damages and the costs of the action, together with a reasonable attorney's fee as determined by the court, and is further liable for punitive damages in the event that the noncompliance was willful. 15 U.S.C. §§ 1681n; 1681o.

### *The WCA*

60. The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

61. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies, and instructs that these protections must be "liberally construed and applied" in order "to induce compliance with the WCA and thereby promote its underlying

objectives." Wis. Stat. §§ 421.102(1), 425.301; *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983).

62. To further the objectives underlying the WCA, the Wisconsin legislature has empowered the Wisconsin Department of Financial Institutions (the "DFI") and the Wisconsin Department of Justice to bring actions against any person who violates the WCA, and has further provided Wisconsin consumers with an array of protections and legal remedies, including a private cause of action to temporarily or permanently enjoin conduct that violates the WCA or the federal consumer credit protection act and recover classwide statutory, actual, and punitive damages on behalf of all consumers who suffer similar injuries. Where a consumer seeks injunctive or declaratory relief, the WCA provides that "it shall not be a defense to an action brought under this section that there exists an adequate remedy at law." *See* Wis. Stats. §§ 421.102(1), 425.301, 425.401, 426.109(1), 426.110(1); 426.110(4)(e), 426.301.

63. The private cause of action is essential to deterring violations and furthering the the WCA's underlying objectives:

> The provisions of the WCA for private enforcement through the use of civil legal remedies by the individual consumer are some of the most important sections of the Act. The function of private enforcement is both to secure the rights of the individual and simultaneously to assist public authorities in achieving compliance for the ultimate benefit of all consumers.

Thomas D. Crandall, "Wisconsin Consumer Credit Laws Before and After the Consumer Act," 1973 Wis. L. Rev. 334, 376-77.

64. Thus, private actions under the WCA benefit not only consumers whose rights have been violated and competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law, but also the public authorities and the public generally, who would otherwise be burdened with the costs of using public resources to achieve compliance.

65. The WCA expressly authorizes injunctive or declaratory relief, authorizing individual actions to enjoin "any person who in making, soliciting or enforcing consumer credit transactions engages in … making or enforcing unconscionable terms or provisions of consumer credit transactions or false, misleading, deceptive, or unconscionable conduct in inducing customers to enter into consumer credit transactions." Wis. Stat. § 426.110(1) and (2).

66. The Act requires that courts analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," and authorizes "any customer affected by a violation of chs. 421 to 427 and 429 … or by a violation of the federal consumer credit protection act … [to] bring a civil action on behalf of all persons similarly situated, for actual damages by reason of such conduct or violation, together with penalties as provided in sub. (14), reasonable attorney fees and other relief to which such persons are entitled under chs. 421 to 427 and 429." Wis. Stat. § 426.110(1).

67. Wis. Stat. § 422.502(1) states that: "A person may not act as a credit services organization unless the person has been issued a certificate of registration from the administrator and the person has complied with the bond or letter of credit requirements under sub. (3)."Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

## COUNT I – FCRA

68. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Amended Complaint.

69. Defendant obtained a prescreened list that included Plaintiff's consumer report in connection with the mailing of Exhibit A.

70. Exhibit A is not a firm offer of credit or insurance.

12

71. Defendant obtained a consumer report respecting Plaintiff under false pretenses and without any permissible purpose.

72. Defendants' conduct was willful or, alternatively, negligent.

73. Defendant violated 15 U.S.C. §§ 1681b, 1681e, and 1681q.

## COUNT II– WCA

74. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

75. Defendant is engaged in the business of an Adjustment Services Company, as that term is defined in Wis. Stat. § 218.02.

76. Defendant is engaged in the business of a Credit Services Organization as that term is defined in Wis. Stat. § 422.501.

77. Defendant is not licensed as an Adjustment Service Company by the DFI.

78. Defendant has not registered as a Credit Services Organization with the DFI.

79. Defendant violated Wis. Stat. § 422.502(1).

## CLASS ALLEGATIONS

80. Plaintiff brings this action on behalf of three classes.

81. Class I ("Nationwide Class") consists of:

(a) all natural persons in the United States of America, (b) who were sent a letter in the form represented by Exhibit A to the Amended Complaint in this action, (c) from September 11, 2018 through the present, (d) that was not returned by the postal service.

82. Class II ("Wisconsin Class") consists of:

(a) all natural persons in the State of Wisconsin, (b) who were sent a letter in the form represented by Exhibit A to the Amended Complaint in this action, (c) from September 11, 2018 through the present, (d) that was not returned by the postal service.

13

83. Class III ("Injunctive Class") consists of:

(a) all natural persons in the State of Wisconsin, (b) to whom DRD solicited debt restructuring services in exchange for payment of money or other valuable consideration, (c) from September 11, 2018 through the present.

84. Each class is so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of each class.

85. There are questions of law and fact common to the class members, which common questions predominate over any questions that affect only individual class members.

86. Plaintiff's claims are typical of the claims of the class members. All are based on the same factual and legal theories.

87. Plaintiff will fairly and adequately represent the interests of the class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

88. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

89. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the classes and against Defendant for:

(a) compensatory damages;

(b) statutory damages;

(c) punitive damages;

(d) injunctive relief;

(e) declaratory relief;

(f) attorneys' fees, litigation expenses and costs of suit; and

(g) such other or further relief as the Court deems proper.

Dated: May 5, 2021

**ADEMI LLP**

By: /s/ Mark A. Eldridge
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com