# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**MARY McGALLOWAY,**
  *individually and on behalf of all others similarly situated,*

    **Plaintiff,**

      v.                                        Case No. 20-CV-1740-SCD

**DEBT RESOLUTION DIRECT LLC,**
  *doing business as Debt Advisors of America,*

    **Defendant.**

## DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

      Mary McGalloway has filed an amended class-action complaint alleging that Debt Resolution Direct LLC, doing business as Debt Advisors of America, obtained her private consumer credit information (as well as that of other potential class members) without any permissible purpose, via a falsified certification, and under false pretenses, all in violation of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681–1681x. McGalloway alleges that the same conduct also violates the Wisconsin Consumer Act, Wis. Stat. Ch. 421–427, because Debt Advisors was unregistered with the state financial department at the time.

      Debt Advisors has moved to dismiss the amended complaint for failure to state a claim upon which relief can be granted. Because the amended complaint does not plausibly suggest that McGalloway suffered any actual damages as a result of Debt Advisors' allegedly unlawful conduct, she cannot proceed on a claim that Debt Advisors negligently failed to comply with the FCRA. However, the allegations in the amended complaint are sufficient to state claims

for willful noncompliance with the FCRA and violation of the WCA. Accordingly, I will grant the motion in part and deny it in part.

BACKGROUND

"The Fair Credit Reporting Act or FCRA protects consumers' privacy in their credit information. It does so in part by prohibiting consumer reporting agencies . . . from releasing credit information except under specific circumstances, which Congress enumerated in 15 U.S.C. § 1681b." *Crabtree v. Experian Info. Sols., Inc.*, 948 F.3d 872, 875 (7th Cir. 2020). One exception allows consumer reporting agencies to "furnish a consumer report. . . [t]o a person which it has reason to believe . . . intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer." 15 U.S.C. § 1681b(a)(3)(A).[1]

The FCRA also extends liability to users of consumer reports. For instance, the FCRA prohibits a person from using or obtaining a consumer report for an unauthorized purpose, 15 U.S.C. § 1681b(f), and provides potential penalties for a person who knowingly and willfully obtains such information from a credit reporting agency under false pretenses, 15 U.S.C. § 1681q. The FCRA also requires prospective users of such information to "identify themselves, certify the purposes for which the information is sought, and certify that the information will be used for no other purpose." 15 U.S.C. § 1681e(a). A person who "willfully" violates the FCRA is potentially liable to the consumer for either actual damages or statutory damages between $100 and $1,000, punitive damages, and attorney fees. 15

---

[1] A "consumer report" is "any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used" (among other things) to determine the consumer's eligibility for credit. 15 U.S.C. § 1681a(d)(1).

2

U.S.C. § 1681n. If the violation is merely "negligent," then the person is potentially liable only for actual damages and attorney fees. 15 U.S.C. § 1681o.

In a typical transaction, a consumer reporting agency sells a prospective user like Debt Advisors (or often an intermediary) a list of consumers who meet the user's desired criteria. *See Crabtree*, 948 F.3d at 875. These lists are known in the industry as "prescreen lists." *Id.* "The sharing of a prescreen list is allowed if it results in a 'firm offer of credit or insurance' to every consumer on that list." *Id.* (quoting 15 U.S.C. § 1681b(c)).[2] "In this way, though FCRA broadly prohibits the unauthorized disclosure of credit information, Congress authorized the limited disclosure of such information in exchange for the benefit of a guaranteed offer of credit or insurance." *Crabtree*, 948 F.3d at 875. McGalloway alleges here that Debt Advisors violated this privacy trade-off by obtaining and using her private credit information without making a firm offer.

On or around July 30, 2020, McGalloway received an unsolicited form letter requesting that she contact a 1-800 number "within 10 days of receiving this notice regarding the adjustments of [her] credit accounts." ECF No. 16 ¶¶ 15–18 (citing ECF No. 16-1). The letter indicated that the firm had recently settled accounts with several institutions and that it could do the same for McGalloway. *See* ECF No. 16-1 at 2. The letter then provided an example of how the firm could settle credit accounts:

---

[2] A "firm offer of credit" is "any offer of credit . . . to a consumer that will be honored if the consumer is determined, based on information in a consumer report on the consumer, to meet the specific criteria used to select the consumer for the offer." 15 U.S.C. § 1681a(l).

3

> **PROGRAM EXAMPLE**
> Est. Creditor Balances: $17,500.00
> Est. Settlement Amount: $7,875.00
> Proposed Program Payment: $218.75
> Program Terms: 12-36 Months

ECF No. 16 ¶ 19 (citing ECF No. 16-1). The example, however, came with a disclaimer:

> Reduction balances are for illustrative purposes only and are an estimate and are solely to demonstrate a typical debt situation. Actual debt and savings are dependent on clients' unique financial circumstances. Prior results do not guarantee a similar outcome. We are not a lender, creditor, or a collector. Any persons can opt out by calling the number above. This is not an engagement offer, only an invitation to speak with a representative to determine interest and qualification. Not available in all states. Requires program completion. Program fees are separate and not included in example.

ECF No. 16-1 at 2. The letter warned that interest on McGalloway's unsecured credit balance would likely accrue at an unreasonable rate if she failed to respond to the letter and continued making her minimum payment. ECF No. 16 ¶ 18 (citing ECF No. 16-1).

According to McGalloway, she was confused by the letter, so she had her representatives call the listed 1-800 number. ECF No. 16 ¶¶ 20–21. A representative of "Consumer Services" answered the call and informed McGalloway's representative that the letter had been sent by one of its clients, Debt Advisors of America, a firm that helps consumers eliminate and restructure debt. *Id.* ¶¶ 8, 22–24. The Consumer Services representative also indicated that McGalloway had received the letter "because her account met certain criteria, including that [she] had made minimum payments on credit accounts for several months but the balance of those accounts was not decreasing because of the accrual of interest at high rates." *Id.* ¶ 25. However, McGalloway's credit history was not public information, and she did not authorize Debt Advisors to obtain her credit history. *Id.* ¶ 26.

4

McGalloway doesn't know how Debt Advisors gained access to her private credit information—discovery has been stayed pending resolution of this motion—but she does have a theory. McGalloway thinks that Debt Advisors obtained her credit history information from a prescreened list containing the names and addresses of consumers, like McGalloway, who were making minimum payments on their credit accounts without any reduction in their overall balance. *Id.* ¶ 27. McGalloway surmises that Debt Advisors compiled or had someone else compile this list. *Id.* ¶ 29. And to get access this information, Debt Advisors must have certified that it was obtaining the list for the purpose of making a firm offer of credit. *Id.* ¶ 36. But again, McGalloway doesn't know for certain, so she makes these three allegations "[u]pon information and belief." *See id.* ¶¶ 27, 29, 36.

In September 2020, McGalloway filed a putative class action against Debt Advisors in Wisconsin state court. *See* ECF No. 1-1.[3] Debt Advisors removed the matter to federal court, *see* ECF No. 1, where it was randomly assigned to me, and the parties subsequently consented to the jurisdiction of a magistrate judge under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b), *see* ECF Nos. 7, 12. On May 6, 2021, McGalloway filed an amended class-action complaint that seeks redress for consumer practices that allegedly violate the FCRA and the WCA. *See* ECF No. 16. Count I alleges that Debt Advisors willfully, or alternatively negligently, violated 15 U.S.C. §§ 1681b, 1681e, and 1681q by obtaining a prescreened list that included McGalloway's consumer report in connection with the mailing of the July 2020 letter "under false pretenses and without any permissible purpose." *Id.* ¶¶ 68–73. Count II alleges that Debt Advisors

---

[3] McGalloway also named several individuals as defendants but subsequently dropped them from the suit due to issues with service. *See* ECF No. 25 at 12–13.

violated Wis. Stat. § 422.502(1) by engaging as an unlicensed adjustment services company and an unregistered credit services organization. *Id.* ¶¶ 74–79.

On June 4, 2021, Debt Advisors filed a motion to dismiss McGalloway's amended complaint pursuant to Fed. R. Civ. P. 12(b)(6). *See* ECF No. 21. The motion is now fully briefed and ready for resolution. *See* ECF Nos. 22, 25, 26.

## LEGAL STANDARDS

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) "challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "To survive a motion to dismiss, a complaint must 'state a claim to relief that is plausible on its face.'" *Zemeckis v. Global Credit & Collect. Corp.*, 679 F.3d 632, 634–35 (7th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim satisfies this pleading standard when its factual allegations 'raise a right to relief above the speculative level.'" *Zemeckis*, 679 F.3d at 635 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). When analyzing a motion to dismiss pursuant to Rule 12(b)(6), courts must "accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff." *Johnson v. Enhanced Recovery Co.*, 961 F.3d 975, 980 (7th Cir. 2020) (citing *Heredia v. Capital Mgmt. Servs., L.P.*, 942 F.3d 811, 814 (7th Cir. 2019)).

## DISCUSSION

Debt Advisors argues that McGalloway's amended complaint fails to state a plausible claim for relief under either the FCRA or the WCA.

I.  **FCRA Claims**

Debt Advisors first maintains that the allegations in the amended complaint fail to state a *prima facie* claim that Debt Advisors obtained and used McGalloway's credit report for *any* purpose, let alone an impermissible one. I disagree. Although the July 2020 letter does not reference any credit information specific to McGalloway (or any individual consumer), the amended complaint plausibly suggests that Debt Advisors gained access to such information and used that information to target her and other similarly situated consumers. The amended complaint alleges, upon information and belief, that Debt Advisors obtained information about McGalloway's credit history from a prescreened list containing the names and addresses of consumers who met certain criteria. A prescreened list clearly qualifies as a consumer report, as that term is used in the FCRA. *See Murray v. New Cingular Wireless Servs.*, 523 F.3d 719, 721 (7th Cir. 2008) (explaining that firms may obtain prescreened lists only if the information is used to make a firm offer of credit or insurance). Thus, while it's true that the letter does not describe any private credit information, it's plausible that Debt Advisors learned this information via the prescreening process because it knows that any consumer on that list meets the prescreening criteria.

Contrary to Debt Advisors' suggestion, McGalloway did not need to reference or attach a copy of her credit report showing that Debt Advisors had inquired about her credit history. The amended complaint alleges that McGalloway's representatives called the number listed in the letter and were told that the letter was sent by Debt Advisors and that McGalloway received the letter because her account met certain criteria, including that she had made minimum payments on credit accounts for several months and that the balance of those accounts was not decreasing due to high-rate interest. The amended complaint further

7

alleges that McGalloway's credit history is not public information and that McGalloway did not authorize Debt Advisors to access her credit history. It is reasonable to infer from these allegations that Debt Advisors obtained McGalloway's name and address from a prescreened list that was compiled based on private credit information; proof in the form of the actual report is not needed at the pleading stage.

Debt Advisors next maintains that McGalloway cannot proceed on a claim for negligent violation of the FCRA because that claim requires actual damages and McGalloway does not allege to have suffered any injuries as a result of Debt Advisors' alleged conduct. In response, McGalloway argues that the amended complaint sufficiently alleges at least two bases for actual damages. First, McGalloway claims that, in obtaining a prescreened list bearing her contact information, Debt Advisors obtained sensitive, personal credit information specific to her—that is, that she was making minimum payments on credit accounts without seeing any reduction in her overall balance due to high interest rates. According to McGalloway, being identified based on those negative credit factors caused her "dignitary harm," as "public disclosure of embarrassing information is inherently offensive and harassing." ECF No. 25 at 20–21. Second, McGalloway claims she "clearly suffered actual damages in the amount of the difference between the value of the offer in the [July 2020 letter] and the value of the firm offer that FCRA required [Debt Advisors] to make." *Id.* at 21.

As currently pled, the allegations in the amended complaint do not plausibly suggest that McGalloway has suffered actual damages as a result of Debt Advisors' alleged unlawful acquisition and use of her private credit information. Debt Advisors' alleged violation of McGalloway's privacy alone does not constitute actual damages. *See Martin v. Asset Acceptance,*

8

*LLC*, No. 11 CV 6256, 2012 WL 3042524, 2012 U.S. Dist. LEXIS 103403, at *7–9 (N.D. Ill. July 25, 2012) (rejecting argument "that invasion of privacy alone constitutes actual damages"). Rather, an invasion of privacy must be accompanied by some type of actual harm to the plaintiff to survive dismissal under Rule 12(b)(6). *See id.*

McGalloway, however, does not allege she suffered any such harm. She does not allege, for instance, that Debt Advisors' conduct affected her credit score or resulted in her being denied credit or receiving less favorable credit. *See Novak v. Experian Info. Sols., Inc.*, 782 F. Supp. 2d 617, 623 (N.D. Ill. 2011) (listing examples of actual damages sufficient to plead a negligent FCRA violation) (collecting cases). Nor does McGalloway allege to have acted to her detriment on her alleged confusion in reading the letter. And while McGalloway claims her reputation was damaged by Debt Advisors' actions, the amended complaint does not allege that the letter or embarrassing credit information was shared with anyone but McGalloway herself. *See Renninger v. ChexSystems*, No. 98 C 669, 1998 WL 295497, 1998 U.S. Dist. LEXIS 8528, at *15 (N.D. Ill. May 22, 1998) ("[T]hough actual damages for mental pain and suffering are allowed under the statute, courts have specifically rejected such damages when there is no allegation that any third-party user ever learned of the inaccurate information in the agency's files."); *see also Crabtree*, 948 F.3d at 880 (noting in the context of standing that "[i]t is not enough to say that your reputation was harmed without explaining how").

Likewise, McGalloway's alleged lost value in not receiving a firm offer of credit from Debt Advisors is too speculative to constitute actual damages. For one, McGalloway does not quantify this figure in her amended complaint or brief. Perhaps more importantly, McGalloway does not allege that she would have considered or accepted any firm offer if one

9

had been communicated in the July 2020 letter. *See Renninger*, 1998 U.S. Dist. LEXIS 8528, at *16 (dismissing claim for actual damages under the FCRA where the plaintiff failed to allege that she would have taken advantage of the opportunity she supposedly lost) (citing *Casella v. Equifax Credit Infor. Servs., Inc.*, 56 F.3d 469, 475 (2d Cir. 1995)).

Because McGalloway has not alleged that she was any worse off after receiving and reading the letter, I will dismiss her negligent noncompliance claim under § 1681o(a)(1).[4]

Debt Advisors also maintains that McGalloway's amended complaint does not sufficiently allege a willful violation of the FCRA. According to Debt Advisors, the heightened pleading standard of Fed. R. Civ. P. 9(b) applies to McGalloway's FCRA claims because they are based on a purported fraudulent scheme to obtain and use private consumer credit information. Rule 9(b) provides that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Debt Advisors contends that McGalloway's conclusory statements and allegations based upon "information and belief" do not satisfy this heightened standard.

I agree that Rule 9(b) applies to McGalloway's FCRA claims. The amended complaint alleges that Debt Advisors violated the FCRA in three ways: (1) by obtaining and using McGalloway's consumer report without a permissible purpose, in violation of § 1681b; (2) by falsely certifying the purpose for which it sought McGalloway's credit information, in

---

[4] A related issue, not addressed by the parties, is whether McGalloway's failure to sufficiently plead actual damages also deprives this court of jurisdiction. Based on my review of the case law, I am satisfied that the alleged statutory violation—that Debt Advisors unlawfully invaded McGalloway's privacy—is sufficient to establish an injury-in-fact for standing purposes. *See, e.g.*, *Nayab v. Capital One Bank USA*, 942 F.3d 480, 487 (9th Cir. 2019) (holding that "a consumer suffers a concrete injury in fact when a third-party obtains her credit report for a purpose not authorized by the FCRA"); *see also Crabtree*, 948 F.3d at 879 (affirming the dismissal of a FCRA claim for lack of standing in part because the plaintiff did not plausibly allege that the defendant shared his private credit report with a lender not intending to make a firm offer); *Santangelo v. Comcast Corp.*, 162 F. Supp. 3d 691, 697–98 (N.D. Ill. 2016) (finding standing where the plaintiff alleged that the defendant "obtained his credit report without a permissible purpose in violation of the FCRA").

10

violation of § 1681e; and (3) by obtaining McGalloway's credit information under false pretenses, in violation of § 1681q. McGalloway does not dispute that the last two alleged violations must be pleaded with particularity.

Moreover, although Rule 9(b) usually does not apply to claims under § 1681b, the overarching theory of McGalloway's case is grounded in allegations of fraud. *See, e.g.*, *Mathews v. Verizon Communc'ns Inc.*, No. 19-21442, 2020 WL 5201407, 2020 U.S. Dist. LEXIS 158270, at *10–12 (D.N.J. Sept. 1, 2020) (declining to apply Rule 9(b) to a § 1681b where the plaintiff did not allege any misrepresentation). Indeed, McGalloway explicitly alleges in her amended complaint that Debt Advisors "engaged in a fraudulent scheme to obtain and use protected consumer data to market debt restructuring services to consumers." ECF No. 16 ¶ 13. In other words, McGalloway's claim that Debt Advisors obtained and used her consumer report without a permissible purpose is inextricably intertwined with her fraud claims. Because "the core theory of fraud permeates the entire Amended Complaint and underlies all [McGalloway's] claims," I will apply the heightened pleading standard of Rule 9(b). *Mathews*, 2020 U.S. Dist. LEXIS 158270, at *12 (quoting *Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 160 (3d Cir. 2004)).

The FCRA imposes civil liability on "[a]ny person who willfully fails to comply with any requirement imposed under [the Act] with respect to any consumer." § 1681n(a). "[T]he Supreme Court held in *Safeco Insurance Co. v. Burr*, 127 S. Ct. 2201 (2007), that this means recklessness—something more than negligence but less than knowledge of the law's requirements." *Murray v. New Cingular Wireless Servs.*, 523 F.3d 719, 725–26 (7th Cir. 2008). The Court further explained that

> a company subject to FCRA does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms,

11

> but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

*Id.* at 726 (quoting *Safeco*, 127 S. Ct. at 2215). This is an objective standard. *Murray*, 523 F.3d at 726.

Here, McGalloway has pleaded sufficient facts to plausibly suggest that Debt Advisors willfully violated the FCRA. The amended complaint alleges, upon information and belief, that Debt Advisors obtained information about McGalloway's credit history from prescreened lists containing the names and addresses of consumers who met certain credit criteria; compiled or directed an agent to compile that list; and certified to a consumer reporting agency or reseller of consumer reports that it was obtaining that list for the purposes of making firm offers of credit or insurance. If these were the only allegations in the amended complaint to support McGalloway's claim for a willful violation of the FCRA, then Debt Advisors would be right in arguing for dismissal. *See Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 684 (7th Cir. 1992) ("Even before Rule 11 was amended to require [reasonable precomplaint inquiry], . . . it was understood that the duty to plead the circumstances constituting fraud with particularity could not be fulfilled by pleading those circumstances on 'information and belief' unless they were facts inaccessible to the plaintiff."); *see also Dornhecker v. Ameritech Corp.*, 99 F. Supp. 2d 918, 928 (N.D. Ill. 2000) (distinguishing FCRA fraud claims, which must be pleaded with particularity—i.e., not on "information and belief"—from FCRA failure-to-investigate claim). But there's more.

The amended complaint also alleges that McGalloway's representatives were told that Debt Advisors sent the letter and that McGalloway received the letter due to specific information in her credit history. It is reasonable to infer from these allegations that the information was communicated to Debt Advisors, which targeted McGalloway (and other

12

Case 2:20-cv-01740-SCD   Filed 07/28/21   Page 12 of 15   Document 27

consumers) because she met the criteria the company was looking for. The amended complaint also notes that the FCRA requires potential users of information in consumer reports to certify the purposes for which the information is sought and to certify that the information will not be used for any other purpose. And the amended complaint recounts Debt Advisors' self-proclaimed expertise in the debt-restructure industry. Together these allegations plausibly suggest that Debt Advisors knew or should have known that it was unlawful to obtain and use McGalloway's private credit information unless it provided her with a firm offer of credit.

Because McGalloway has pled sufficient facts plausibly showing that Debt Advisors willfully violated the FCRA, Debt Advisors' motion will be denied to the extent it seeks dismissal of McGalloway's willful-violation claim under § 1681n.

## II. WCA Claim

Finally, Debt Advisors maintains that McGalloway's WCA claim is deficient because the amended complaint is contradictory and does not provide Debt Advisors sufficient notice of its alleged violation. I disagree. First, the amended complaint is not inconsistent to the extent it alleges that Debt Advisors is both an adjustment services company and a credit services organization. The WCA defines "credit services organization" as "a person or merchant who, with respect to the extension of credit by others, sells, provides or performs, or represents that the person will sell, provide or perform, [specified] services in return for the payment of money or for other valuable consideration." Wis. Stat. § 422.501(2)(a). Exempted from the statutory definition of a credit services organization is (among other things) "[a] person *licensed* as an adjustment service company under s. 218.02 *if the person is acting within the course and scope of that license*." Wis. Stat. § 422.501(2)(b)4 (emphasis added). The amended

13

complaint, however, alleges that Debt Advisors was acting as an *unlicensed* adjustment service company. Debt Advisors' argument that the exemption also applies to an unlicensed adjustment services company is not supported by the plain language of the statute, and the company provides no other authority to support it.

Second, the amended complaint pleads sufficient facts to plausibly suggest that Debt Advisors violated Wis. Stat. § 422.502(1). That statute prohibits a person from acting as a credit services organization "unless the person has been issued a certificate of registration from the administrator and the person has complied with the bond or letter of credit requirements under sub. (3)." Wis. Stat. § 422.502(1). The amended complaint alleges that Debt Advisors was engaged as a credit services organization when it solicited McGalloway (and others) for its debt-restructure programs and that Debt Advisors is not registered as such with the Wisconsin Department of Financial Institutions. Nothing more is required to survive a motion to dismiss. As McGalloway concedes, the amended complaint's earlier reference to Wis. Stat. § 427.104(1)(j)—which relates to the conduct of debt collectors—was a scrivener's error. The amended complaint makes no other reference to debt collection practices and does not repeat its citation to that statute within Count II. In other words, McGalloway does not purport to state a claim for relief under § 427.104(1)(j).

Because McGalloway has pled sufficient facts plausibly showing that Debt Advisors was acting as an unregistered credit services organization when it sent her the July 2020 letter, Debt Advisors' motion will be denied to the extent it seeks dismissal of McGalloway's WCA claim.

## CONCLUSION

For all the foregoing reasons, Debt Advisors' motion to dismiss first amended class action complaint, ECF No. 21, is **GRANTED in part** and **DENIED in part**.

**SO ORDERED** this 28th day of July, 2021.

_____
STEPHEN C. DRIES
United States Magistrate Judge