# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

---

**MARY McGALLOWAY,**
*individually and on behalf of all others similarly situated,*

    **Plaintiff,**

    **v.**                                                      **Case No. 20-CV-1740-SCD**

**DEBT RESOLUTION DIRECT, LLC,**
*doing business as Debt Advisors of America,*
**REDSTONE PRINT & MAILING, INC.,** and
**THE DATA SUITE, INC.,**

    **Defendants.**

---

## DECISION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

---

Mary McGalloway, a Wisconsin resident, has filed a second amended class-action complaint seeking redress for consumer practices that allegedly violate the Fair Credit Reporting Act, 15 U.S.C. §§ 1681–1681x, and the Wisconsin Consumer Act, Wis. Stat. Ch. 421–427. Her claims arise from an unsolicited letter she received that offered to restructure her debt. The letter was sent to McGalloway by Redstone Print & Mail, Inc. (erroneously sued as Redstone Print & Mailing, Inc.), a California corporation, on behalf of Debt Resolution Direct LLC, a California limited liability company that does business as Debt Advisors of America. McGalloway's name apparently appeared on a list of consumers with distressed credit that was provided by The Data Suite, Inc., another California corporation. In other words, The Data Suite put the list together for Debt Advisors to use in a direct mail marketing campaign, and Redstone printed, assembled, and mailed the letters. McGalloway alleges that Debt Advisors, together with Redstone, obtained and used her private credit information (as

well as that of other potential class members) from The Data Suite via a falsified certification, under false pretenses, and without any permissible purpose.

Redstone and The Data Suite have moved to dismiss the second amended complaint for lack of personal jurisdiction. Because McGalloway has failed to make out a prima facie case for personal jurisdiction over Redstone and The Data Suite in this court, I will grant the motion to dismiss.

## BACKGROUND

"The Fair Credit Reporting Act or FCRA protects consumers' privacy in their credit information. It does so in part by prohibiting consumer reporting agencies . . . from releasing credit information except under specific circumstances, which Congress enumerated in 15 U.S.C. § 1681b." *Crabtree v. Experian Info. Solutions, Inc.*, 948 F.3d 872, 875 (7th Cir. 2020).[1] One exception allows consumer reporting agencies to "furnish a consumer report . . . [t]o a person which it has reason to believe . . . intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer." 15 U.S.C. § 1681b(a)(3)(A).[2] However, the FCRA prohibits a person from using or obtaining a consumer report for an unauthorized purpose, 15 U.S.C. § 1681b(f), and provides potential penalties for a person who knowingly and willfully obtains such information from a consumer

---

[1] A "consumer reporting agency" is "any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports." 15 U.S.C. § 1681a(f).

[2] A "consumer report" is "any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used" (among other things) to determine the consumer's eligibility for credit or insurance. 15 U.S.C. § 1681a(d)(1)(A).

reporting agency under false pretenses, 15 U.S.C. § 1681q. The FCRA also requires prospective users of such information to "identify themselves, certify the purposes for which the information is sought, and certify that the information will be used for no other purpose." 15 U.S.C. § 1681e(a).

To better understand the issues in this case, it may be helpful to review the steps of a typical transaction involving the lawful exchange of consumer information. First, the consumer reporting agency "compiles consumer information into credit reports and scores." *Crabtree*, 948 F.3d at 875. The consumer reporting agency then sells a prospective user (or often an intermediary) a list of consumers who meet the user's desired criteria. *See Crabtree*, 948 F.3d at 875. These lists are known in the industry as "prescreen lists." *Id.* Finally, users contact individuals on the list—often via a direct mail marketing campaign—to extend an offer of credit or insurance. "The sharing of a prescreen list is allowed if it results in a 'firm offer of credit or insurance' to every consumer on that list." *Id.* (quoting 15 U.S.C. § 1681b(c)(1)(B)(i)).[3] "In this way, though FCRA broadly prohibits the unauthorized disclosure of credit information, Congress authorized the limited disclosure of such information in exchange for the benefit of a guaranteed offer of credit or insurance." *Crabtree*, 948 F.3d at 875. McGalloway alleges that Debt Advisors, Redstone, and The Data Suite violated this privacy trade-off by obtaining and using her private credit information without making a firm offer.

First, a bit of background on the defendants (as McGalloway views them). Debt Resolution Direct is a California limited liability company that offers debt-restructuring

---

[3] A "firm offer of credit or insurance" is "any offer of credit or insurance to a consumer that will be honored if the consumer is determined, based on information in a consumer report on the consumer, to meet the specific criteria used to select the consumer for the offer." 15 U.S.C. § 1681a(l).

services to consumers. *See* ECF No. 37 ¶¶ 7–12. The company conducts its business under the name Debt Advisors of America and attempts to attract clients via direct marketing, whether through the mail or by phone. Redstone Print & Mail is a California corporation that assembles or purchases consumer data from consumer reporting agencies that compile consumer reports and data or from resellers of consumer reports and data. *See id.* ¶¶ 13–15. Redstone then sells this information to third parties, including Debt Advisors, "with the purpose of soliciting consumers to obtain services from [Debt Advisors]." *Id.* ¶ 14. The Data Suite is a California corporation that regularly assembles or evaluates consumer credit information and sells consumer reports to third parties by means of interstate commerce. *See id.* ¶¶ 16–21. McGalloway contends that Debt Advisors, Redstone, and The Data Suite collectively "engaged in a fraudulent scheme to obtain and use protected consumer data to market debt restructuring services to consumers." *Id.* ¶ 22.

According to McGalloway, this is how the scheme played out in her case. On or around July 30, 2020, Redstone mailed a form letter to McGalloway on behalf of Debt Advisors. *Id.* ¶¶ 24–25.[4] Debt Advisors used the letter for marketing purposes and reviewed and approved the letter prior to Redstone mailing it. *Id.* ¶ 25. The letter requested McGalloway to contact a 1-800 number regarding the adjustments of her credit accounts, indicated that the firm had recently settled accounts with several institutions, and claimed that the firm could do the same for McGalloway. *Id.* ¶ 26; ECF No. 16-1 at 2. The letter then provided an example of how the firm could settle credit accounts:

---

[4] McGalloway did not attach a copy of the letter to her second amended complaint. *See* ECF No. 37. She did, however, include the letter with her original complaint, *see* ECF No. 1-1 at 21–22, and her first amended complaint, *see* ECF No. 16-1, and the second amended complaint clearly references that same letter.

4

**PROGRAM EXAMPLE**
Est. Creditor Balances: $17,500.00
Est. Settlement Amount: $7,875.00
Proposed Program Payment: $218.75
Program Terms: 12-36 Months

ECF No. 37 ¶ 27; ECF No. 16-1 at 2. The example, however, came with a disclaimer:

Reduction balances are for illustrative purposes only and are an estimate and are solely to demonstrate a typical debt situation. Actual debt and savings are dependent on clients' unique financial circumstances. Prior results do not guarantee a similar outcome. We are not a lender, creditor, or a collector. Any persons can opt out by calling the number above. This is not an engagement offer, only an invitation to speak with a representative to determine interest and qualification. Not available in all states. Requires program completion. Program fees are separate and not included in example.

ECF No. 16-1 at 2 (enlarged slightly for clarity). The letter warned that interest on McGalloway's unsecured credit balance would likely accrue at an unreasonable rate if she failed to respond to the letter and continued making her minimum payment. *Id.*; ECF No. 37 ¶ 26.

Given that her credit history is not public information, McGalloway believes that her name and address must have "appeared on a 'pre-screened list' that included similarly situated consumers within a particular geographic area and whose credit history met certain criteria." ECF No. 37 ¶¶ 29–30. She thinks the transaction went something like this: The Data Suite obtained a prescreened list of consumers, including McGalloway; The Data Suite sold the list to Redstone; and Debt Advisors paid Redstone to send form letters to consumers within a particular geographic area who, like McGalloway, had an estimated debt above a certain threshold and were making minimum payments on their credit accounts without any reduction in their overall balance. *See id.* ¶ 28. McGalloway believes The Data Suite obtained the prescreened list in one of two ways: (1) The Data Suite "certified to another consumer reporting agency or reseller of consumer reports that [it] was obtaining the pre-screened list for the purposes of making firm offers of credit or insurance"; or (2) The Data Suite assembled

5

and compiled consumers' data in-house and sold a list of consumers to Redstone (which, in turn, shared the list with Debt Advisors) based on information provided by the creditors of such consumers or some other intermediary. *Id.* ¶¶ 33–34. Either way, McGalloway did not authorize Debt Advisors, Redstone, or The Data Suite to obtain her credit history. *Id.* ¶ 29.

In September 2020, McGalloway filed a putative class action against Debt Advisors in Wisconsin state court. *See* ECF No. 1-1.[5] Debt Advisors removed the matter to federal court, *see* ECF No. 1, and the clerk of court randomly assigned it to me. More recently, McGalloway filed a second amended class-action complaint that added Redstone and The Data Suite as defendants. *See* ECF No. 37. Count I states a cause of action against all three defendants for violating the FCRA, 15 U.S.C. §§ 1681b, 1681e, and 1681q. *See id.* ¶¶ 66–70. Specifically, the second amended complaint alleges that Debt Advisors and Redstone "obtained and used a consumer report respecting [McGalloway] from [The Data Suite] under false pretenses and without any permissible purpose." *Id.* ¶ 68. Count II states a cause of action against only Debt Advisors, for violating the WCA. *See id.* ¶¶ 71–77.

On April 1, 2022, Redstone and The Data Suite filed a motion to dismiss the second amended complaint under Rule 12(b)(2) of the Federal Rules of Civil Procedure for lack of personal jurisdiction. *See* ECF Nos. 41, 41-1. Redstone and The Data Suite submitted two declarations in support of their motion to dismiss: one from Redstone's operations director, ECF No. 41-2, and the other from the operations manager of The Data Suite, ECF No. 41-3. McGalloway has filed a brief in opposition to the motion, ECF No. 43, as well as a declaration from her lawyer, ECF No. 42, and a few exhibits, ECF Nos. 42-1, 42-2, 42-3, 42-4. Redstone

---

[5] McGalloway also named several individuals as defendants but subsequently dropped them from the suit due to issues with service. *See* ECF No. 25 at 12–13.

6

and The Data Suite also submitted a reply brief. *See* ECF No. 44. All parties have consented to the jurisdiction of a magistrate judge under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b), *see* ECF Nos. 7, 12, 45.

## LEGAL STANDARDS

"The plaintiff need not include facts alleging personal jurisdiction in the complaint, but 'once the defendant moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating the existence of jurisdiction.'" *Curry v. Revolution Labs., LLC*, 949 F.3d 385, 392 (7th Cir. 2020) (quoting *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003)). "The precise nature of the plaintiff's burden depends upon whether an evidentiary hearing has been held." *Id.* Because the parties in this case have not requested an evidentiary hearing, McGalloway "bears only the burden of making a prima facie case for personal jurisdiction." *Curry*, 949 F.3d at 392–93 (quoting *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 423 (7th Cir. 2010)). "[O]nce the defendant has submitted affidavits or other evidence in opposition to the exercise of jurisdiction, the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *Purdue Research*, 338 F.3d at 783. The court must resolve any factual conflicts in the parties' supporting materials in the plaintiff's favor. *Curry*, 949 F.3d at 393.

## DISCUSSION

"Because this case involves claims under both federal law and state law, the . . . court's jurisdiction rest[s] on a federal question, 28 U.S.C. § 1331, and supplemental jurisdiction, 28 U.S.C. § 1367." *Id.* "In a case involving federal question jurisdiction, 'a federal court has personal jurisdiction over the defendant if either federal law or the law of the state in which

7

the court sits authorizes service of process to that defendant.'" *Id.* (quoting *Mobile Anesthesiologists Chicago, LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440, 443 (7th Cir. 2010)). The FCRA does not authorize nationwide service of process. *See Lockard v. Equifax, Inc.*, 163 F.3d 1259, 1265 (11th Cir. 1998). Thus, "personal jurisdiction is governed by the law of the forum state." *Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012) (citing Fed. R. Civ. P. 4(k)(1)(A)). "The Wisconsin Supreme Court has held that personal jurisdiction over a defendant exists when (1) the defendant is subject to jurisdiction under the Wisconsin long-arm statute and (2) exercising jurisdiction under the statute does not violate the due process requirements of the Fourteenth Amendment of the federal constitution." *Mid-America Tablewares, Inc. v. Mogi Trading Co., Ltd.*, 100 F.3d 1353, 1358–59 (7th Cir. 1996) (citing *In re All-Star Ins. Corp.*, 327 N.W.2d 648, 650 (Wis. 1983)). The due-process question is the more complicated of the two in this case, so I will start there and work back to the long-arm statute.

I.      **Exercising Jurisdiction over Redstone and The Data Suite in Wisconsin Would Violate the Due Process Clause**

"For a court to exercise personal jurisdiction over an out-of-state defendant, the key issue for constitutional purposes is whether the defendant has sufficient 'minimum contacts' with the forum state such that 'the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Felland*, 682 F.3d at 672–73 (quoting *Tamburo v. Dworkin*, 601 F.3d 693, 701 (7th Cir. 2010)). "Each defendant must have 'purposely established minimum contacts with the forum state such that he or she should reasonably anticipate being haled into court there.'" *Felland*, 682 F.3d at 673 (quoting *Tamburo*, 601 F.3d at 701). However, "a defendant's physical presence within the state is not required." *Lexington Ins. Co. v. Hotai Ins. Co., Ltd.*, 938 F.3d 874, 878 (7th Cir. 2019) (citing *Walden v Fiore*, 571 U.S. 277, 283 (2014)).

8

"Personal jurisdiction takes two forms—general and specific." *Lexington Ins. Co.*, 938 F.3d at 878. McGalloway does not assert, and the evidence does not support, a claim of general jurisdiction over Redstone and The Data Suite in Wisconsin. *See* ECF No. 43 at 6 n.3. Rather, she contends that this court can exercise specific jurisdiction over Redstone and The Data Suite for her FCRA claim. Specific personal jurisdiction is appropriate where (1) "the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state"; (2) "the alleged injury arises out of the defendant's forum-related activities"; and (3) the exercise of jurisdiction comports with "traditional notions of fair play and substantial justice." *Tamburo*, 601 F.3d at 702 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471 (1985); *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

To determine whether a defendant has purposefully directed its activities at the forum state or has purposefully availed itself of the privilege of conducting business in the forum state, courts must "look to see if there are 'minimum contacts between the defendant and the forum State." *Lexington Ins. Co.*, 938 F.3d at 879 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980)). "The relevant contacts are those that center on the relations among the defendant, the forum, and the litigation." *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 801 (7th Cir. 2014) (citing *Walden*, 571 U.S. at 279).

"Crucially, not just any contacts will do: 'For a State to exercise jurisdiction consistent with due process, the defendant's *suit-related* conduct must create a substantial connection with the forum State." *Advanced Tactical*, 751 F.2d at 801 (quoting *Walden*, 571 U.S. at 284). "The 'mere fact that [defendant's] conduct affected plaintiffs with connections to the forum State

9

does not suffice to authorize jurisdiction.'" *Advanced Tactical*, 751 F.2d at 801 (quoting *Walden*, 571 U.S. at 291). "Furthermore, the relation between the defendant and the forum 'must arise out of contacts that the defendant *himself* creates with the forum.'" *Advanced Tactical*, 751 F.2d at 801 (quoting *Walden*, 571 U.S. at 284). "Contacts between the plaintiff or other third parties and the forum do not satisfy this requirement." *Advanced Tactical*, 751 F.2d at 801 (citing *Burger King*, 471 U.S. at 475).

McGalloway maintains that Redstone and The Data Suite purposefully targeted Wisconsin residents via a "persistent and ongoing joint solicitation campaign" that violated the FCRA. ECF No. 43 at 11. According to McGalloway, The Data Suite unlawfully compiled or obtained Wisconsin consumers' private credit information and sold a prescreened list of consumers to Redstone. Redstone then resold the list to Debt Advisors and sent solicitations on behalf of Debt Advisors to consumers on the list, including McGalloway, a Wisconsin resident.

The mere acquisition—and later exchange—of Wisconsin consumers' private credit information is not a contact with Wisconsin. McGalloway concedes in her second amended complaint that she doesn't know how The Data Suite initially acquired the prescreened list that serves as the basis for this lawsuit, but she offers two possibilities. McGalloway believes The Data Suite obtained the prescreened list from another consumer reporting agency. ECF No. 37 ¶ 33. However, she does not allege that the other consumer reporting agency was a Wisconsin entity or that The Data Suite otherwise reached into Wisconsin to obtain this information. The fact that McGalloway is a Wisconsin resident is not enough to establish that The Data Suite purposefully directed its activities at Wisconsin. *See Walden*, 571 U.S. at 285 ("[T]he plaintiff cannot be the only link between the defendant and the forum."); *see also*

10

*McGoveran v. Amazon Web Servs., Inc.*, 488 F. Supp. 3d 714, 721–22 (S.D. Ill. 2020) (granting motion to dismiss for lack of personal jurisdiction where the plaintiff's presence in the forum state served as the defendant's only forum contact); *Gillison v. Lead Express, Inc.*, No. 3:16cv41, 2017 WL 1197821, 2017 U.S. Dist. LEXIS 48557, at *25 (E.D. Va. Mar. 30, 2017) ("Obtaining information on Virginia consumers from a third-party without any direct interaction with those Virginia consumers does not establish purposeful availment."); *cf. Dobrowolski v. Intelius, Inc.*, No. 17 CV 1406, No. 17 CV 1447, No. 17 CV 1519, 2018 WL 11185289, 2018 U.S. Dist. LEXIS 240434, at *6–7 (N.D. Ill. May 21, 2018) (finding personal jurisdiction where defendant "reached into Illinois" via "extensive databases and public records repositories" to obtain data on more than 5,000 Illinois residents).

McGalloway alternatively alleges that The Data Suite assembled and compiled the data in house before selling the list to Redstone. ECF No. 37 ¶ 34. But The Data Suite and Redstone are California corporations with their principal places of business in California and no offices in Wisconsin. Thus, under this theory, the acts of compiling, selling, purchasing, and exchanging the information were local to or within California, not Wisconsin. *See, e.g.*, *Breneisen v. Countryside Chevrolet/Buick/GMC, Inc.*, No. 20 C 2867, 2021 WL 963763, 2021 U.S. Dist. LEXIS 48002, at *6–7 (N.D. Ill. Mar. 15, 2021) (granting motion to dismiss for lack of personal jurisdiction because the plaintiffs failed to allege that the defendant accessed their credit reports in Illinois, the forum state); *see also A, B, C, D, E, F v. Zemin*, 282 F. Supp. 2d 875, 889 (N.D. Ill. 2003) (finding that the defendant's "alleged creation of a blacklist on which the names of seven Illinois residents happen to appear [did] not constitute a contact with Illinois" because "[t]he list evidently was created in China"); *Blasi v. United Debt Servs., LLC*, No. 2:14-cv-083, 2016 WL 11734109, 2016 U.S. Dist. LEXIS 204381, at *9–10 (S.D. Ohio Mar. 30,

2016) (rejecting plaintiffs' argument that Ohio had personal jurisdiction over the defendant based on its mere possession—and later sale—of "a batch of consumer reports that contained some Ohio consumers' information").

McGalloway nevertheless argues that this court has jurisdiction over The Data Suite because the acquisition and exchange of her credit information caused harm in Wisconsin. *See* ECF No. 43 at 12–14. Under the *Calder* "effects test," the purposeful direction prong of the specific personal jurisdiction analysis can be met if a defendant's "intentional conduct in [the foreign state was] calculated to cause injury to [the plaintiff] in [the forum state]." *Calder v. Jones*, 465 U.S. 783, 791 (1984). However, the Supreme Court recently clarified that jurisdiction does not vest in a state just because that's where the plaintiff was injured: "[t]he proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Walden*, 571 U.S. at 290.

McGalloway has not established a meaningful connection between The Data Suite's conduct and Wisconsin. The second amended complaint does not allege that The Data Suite accessed private credit information of a few consumers known to reside in Wisconsin. Rather, it alleges that The Data Suite compiled or obtained a batch of reports on consumers nationwide. *See* ECF No. 37 ¶ 79. The second amended complaint further alleges that, to the extent such conduct was aimed at a particular geographic region, it was Debt Advisors—not The Data Suite (or Redstone)—that did the targeting. *See id.* ¶ 28. And even then, the second amended complaint does not allege that Debt Advisors (a California LLC) focused particularly on Wisconsin, only that some Wisconsin consumers (including McGalloway) happened to end up on the final list. The consumers' location, however, cannot be the only

12

link between the defendant and the forum state. *See Gillison*, 2017 U.S. Dist. LEXIS 48557, at *29–35 (finding no specific personal jurisdiction based on nonresident defendant's mass acquisition of consumer reports, including those of forum-state residents, and distinguishing cases, like the ones McGalloway relies upon, involving individualized schemes to impermissibly acquire consumer reports); *see also Cunningham v. Nationwide Sec. Solutions, Inc.*, No. 3:17-cv-337-S-BN, 2018 WL 4575005, 2018 U.S. Dist. LEXIS 163073, at *37–42 (N.D. Tex. Aug. 31, 2018) (finding no personal jurisdiction where only connection between defendant and the forum state was acquisition of consumer reports belonging to forum residents and citing post-*Walden* cases with similar findings).

Moreover, Redstone did not solicit business from Wisconsin residents by mail for pecuniary gain. The second amended complaint alleges that Redstone sent letters offering its debt-restructuring services to consumers in Wisconsin, including McGalloway. ECF No. 37 ¶ 23. But the second amended complaint alleges that only Debt Advisors offers debt-restructuring services, *see id.* ¶¶ 7–21, and that Redstone merely mailed the letter on Debt Advisors' behalf after the company gave its stamp of approval, *id.* ¶¶ 24–25. Indeed, the letter does not reference Redstone at all, and the contact number listed on the letter belongs to Debt Advisors. *See* ECF No. 16-1 at 2; *see also* ECF No. 41-2 ¶ 7. Redstone also has submitted uncontradicted evidence that it did not receive any revenue based on the hits Debt Advisors generated from its mailings. *See* ECF No. 41-2 ¶ 7. In short, Debt Advisors—not Redstone— was the one that solicited business from Wisconsin residents. This fact distinguishes our case from cases cited by McGalloway, like *Hopper v. Credit Associates, LLC*, No. 2:20-cv-522, 2021 WL 1209421, 2021 U.S. Dist. LEXIS 62062 (S.D. Ohio Mar. 31, 2021), involving parties engaging in their own solicitation in the forum state.

13

McGalloway has failed to meet her burden to show the existence of specific jurisdiction over Redstone and The Data Suite, as she has not demonstrated that the corporations purposefully directed their activities at Wisconsin or purposefully availed themselves of the privilege of conducting business in Wisconsin. Because McGalloway has not satisfied the first prong of the specific-jurisdiction analysis, I don't need to address whether this action arose out of Redstone's or The Data Suite's activities in Wisconsin or whether exercising jurisdiction over Redstone and The Data Suite would comport with traditional notions of fair play and substantial justice. *See, e.g.*, *Gillison*, 2017 U.S. Dist. LEXIS 48557, at *35 n.33.

## II. Wisconsin's Long-Arm Statute Does Not Authorize Jurisdiction over Redstone or The Data Suite

For the sake of completeness, I will briefly explain why Wisconsin's long-arm statute, Wis. Stat. § 801.05, also does not authorize the exercise of personal jurisdiction over Redstone and The Data Suite. McGalloway contends that Redstone and The Data Suite fall within reach of two provisions of the statute. First, McGalloway maintains that Wisconsin has personal jurisdiction over Redstone and The Data Suite because, at the time the action was commenced, both corporations were "engaged in substantial and not isolated activities within this state." Wis. Stat. § 801.05(1)(d). According to McGalloway, Redstone's and The Data Suite's "participation in what appear to be persistent and ongoing joint solicitation campaigns targeting Wisconsin residents by procuring and reselling Wisconsin consumers' nonpublic credit history and sending them form letters certainly qualify as 'substantial and not isolated activities within this state.'" ECF No. 43 at 8. I disagree.

The Data Suite did not engage in any activities within Wisconsin. The corporation does not operate a facility in Wisconsin, does not have any employees located in Wisconsin,

14

does not own any assets or real property in Wisconsin, has never opened a bank account in Wisconsin, does not direct its limited advertising at Wisconsin, and has never had a Wisconsin customer. ECF No. 41-3 ¶ 3. The second amended complaint attempts to impute Debt Advisors' Wisconsin activities to The Data Suite, alleging that, "together and individually," the entities sent letters offering its debt-restructuring services to consumers in Wisconsin. ECF No. 37 ¶ 23. But The Data Suite did not send any letters, is not a debt restructurer, and did not receive any compensation as a result of Debt Advisors' Wisconsin solicitations. *See* ECF No. 41-3 ¶¶ 2–6. The Data Suite does compile mailing lists for use by direct mail marketers, and the list at issue in this case did include at least one Wisconsin consumer. However, as described in detail above, no allegations or evidence suggest that the Data Suite reached into Wisconsin to obtain or exchange that information. The Data Suite therefore does not have a local presence or status in Wisconsin.

Although Redstone did engage in some activities in Wisconsin, those activities were insubstantial and isolated. Like The Data Suite, Redstone does not have a physical presence in Wisconsin. *See* ECF No. 41-2 ¶ 3. Also like The Data Suite, to the extent Redstone acquired or exchanged private credit information of Wisconsin consumers, those activities did not occur within Wisconsin. Since going into business in 2016, Redstone has had only one Wisconsin customer. *See id.* ¶ 6. That customer ordered five mailings in 2020, for a total charge of about $5,900 (nearly half of which was postage). A single Wisconsin customer over a six-year span that generated little revenue for Redstone likely does not qualify as "substantial and not isolated" activity in Wisconsin. But even if it did, that activity was not related to this litigation, and McGalloway does not make a case for general jurisdiction over Redstone. Redstone did send a letter to at least one Wisconsin consumer. However, it did so on behalf

15

of Debt Advisors, which controlled the recipient list. *See id.* ¶¶ 4–5; *see also* ECF No. 37 ¶ 28. And Redstone did not receive any compensation from Debt Advisors' solicitation activities. *See* ECF No. 41-2 ¶ 7. Section 801.05(1)(d) therefore does not authorize jurisdiction over Redstone.

Second, McGalloway maintains that Wisconsin has personal jurisdiction over Redstone and The Data Suite because she was injured in Wisconsin based on an out-of-state act and, at the time of her injury, "[s]olicitation . . . activities were carried on within this state by or on behalf of the defendant." Wis. Stat. § 801.05(4)(a). "According to Wisconsin law, before a solicitation triggers § 801.05(4)(a) it must be made by the defendant to the plaintiff, and the defendant must expect some financial benefit." *Federated Rural Elec. Ins. Corp. v. Inland Power & Light Co.*, 18 F.3d 389, 393 (7th Cir. 1994) (citing *Pavlic v. Woodrum*, 486 N.W.2d 533, 535 (Wis. Ct. App. 1992); *Fields v. Peyer*, 250 N.W.2d 311, 316 (Wis. 1977)). As explained more fully above, Redstone and The Data Suite did not solicit business or expect financial benefit from McGalloway or any other Wisconsin resident; Debt Advisors did. The fact that the corporations may have received compensation from Debt Advisors for their role in providing the data and assembling the mailings does not constitute a "solicitation" triggering section 801.05(4)(a). Likewise, Redstone and The Data Suite did not receive any financial benefit from Debt Advisors' solicitations. Debt Advisors therefore did not solicit business from Wisconsin residents "on behalf of" Redstone or The Data Suite.

* * *

In sum, McGalloway has failed to make a prima facie case for personal jurisdiction in Wisconsin over Redstone and The Data Suite. Wisconsin's long-arm statute does not authorize jurisdiction over the two California corporations and, even if it did, exercising

jurisdiction over them in Wisconsin would not comport with the requirements of the Due Process Clause. I will therefore grant the motion to dismiss the second amended complaint for lack of personal jurisdiction over Redstone and The Data Suite.

**CONCLUSION**

For all the foregoing reasons, the court **GRANTS** Redstone's and The Data Suite's motion to dismiss for lack of personal jurisdiction, ECF Nos. 41.

**SO ORDERED** this 29th day of June, 2022.


STEPHEN C. DRIES
United States Magistrate Judge

17
