UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

|   |   |
|---|---|
| MARY McGALLOWAY, Individually and on Behalf of All Others Similarly Situated, | CIVIL ACTION |
| Plaintiff, | |
| v. | NO. 2:20-CV-01740-SCD |
| DEBT RESOLUTION DIRECT LLC d/b/a DEBT ADVISORS OF AMERICA, REDSTONE PRINT & MAILING, INC., and THE DATA SUITE, INC., | JURY TRIAL DEMANDED |
| Defendants. | |

**DEFENDANT DEBT RESOLUTION DIRECT, LLC d/b/a DEBT ADVISORS OF AMERICA'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SANCTIONS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 11 AND 28 U.S.C. § 1927**

Defendant, Debt Resolution Direct, LLC d/b/a Debt Advisors of America ("Defendant" or "DRD"), by and through its undersigned counsel, respectfully moves this Court for an Order, pursuant to Federal Rule of Civil Procedure 11 and 28 U.S.C. § 1927, awarding Defendant sanctions against Plaintiff, Mary McGalloway ("Plaintiff"), Ben James Slatky, Esquire, Jesse Fruchter, Esquire, and John D. Blythin, Esquire (collectively "Plaintiff's Counsel"), and Ademi LLP ("Plaintiff's Law Firm"), for continuing to prosecute a frivolous action against Defendant for alleged violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA") and the Wisconsin Consumer Act, Ch. 421-427, Wis. Stats., on which Plaintiff cannot prevail as a matter of law.

Pursuant to Fed. R. Civ. P. 11(c)(2), Defendant served its Motion for Sanctions on Plaintiff's Counsel, and Plaintiff's Law Firm on June 22, 2022, which is more than twenty-one

i

days from the date of filing of this Motion. (*See* Declaration of Richard J. Perr ("Perr Decl.") ¶ 2, Exhibit 1). At the time of this filing, Plaintiff's Second Amended Complaint has not been dismissed. Accordingly, Plaintiff, Plaintiff's Counsel, and Plaintiff's Law Firm must be sanctioned.

TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................................... 1
II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY ......................................... 1
   A. Plaintiff's Claims .................................................................................................. 1
   B. DRD Does Not Obtain any Credit Reports ......................................................... 3
II. LEGAL ARGUMENT ..................................................................................................... 5
   A. Standard for Sanctions ........................................................................................ 5
   B. Plaintiff's FCRA Claims are Frivolous. ............................................................... 8
      1. Legal Standard – A Consumer Report Must Have Been Pulled for a Claim under Section 1681(b) ............................................................................................. 8
      2. A CRA Must Maintain Reasonable Procedures to Limit the Furnishing of Reports . 10
      3. DRD Did Not Violate Wisconsin Law ........................................................ 10
      4. Plaintiff Filed her Claim without Evidence to Support her Claims ........................... 11
      5. Plaintiff Continues to Prosecute her Claim Despite Producing or Finding No Evidence to Support her Claims ...................................................................... 12
III. CONCLUSION ............................................................................................................ 14

# TABLE OF AUTHORITIES

**Cases**

*Aleksic v. Experian Info. Solutions, Inc.*, No. 13 C 7802, 2014 WL 2769122 (N.D. Ill. June 18, 2014) .................................................................................................................................. 10
*Alston v. Branch Banking & Trust Co.*, No. 15–3100, 2016 WL 4521651 (D. Md. Aug. 26, 2016) .................................................................................................................................. 10
*Alston v. Freedom Plus/Cross River*, No. CV TDC-17-0033, 2018 WL 770384 (D. Md. Feb. 7, 2018) .............................................................................................................................. 9, 12
*Billups v. PHH Mortg. Corp.*, No. 19 C 7873, 2021 WL 1648114 (N.D. Ill. Apr. 27, 2021) ........ 9
*Burda v. M. Ecker Co.*, 2 F.3d 769 (7th Cir. 1993) ....................................................................... 7
*Chicago Newspaper Publishers' Ass'n v. Chicago Web Printing Pressmen's Union No. 7*, 821 F.2d 390 (7th Cir. 1987)). ........................................................................................................ 7
*Cole v. Capital One*, 15-1121, 2016 WL 2621950 (D. Md. May 5, 2016)............................. 9, 12
*Corley v. Rosewood Care Ctr., Inc. of Peoria*, 388 F.3d 990 (7th Cir. 2004) ............................... 6
*Cruz v. Savage*, 896 F.2d 626 (1st Cir. 1990)............................................................................... 8
*Dr. R.C. Samanta Roy Inst. of Sci. & Tech., Inc. v. Lee Enterprises, Inc.*, No. 05 C 0423, 2006 WL 3692361 (E.D. Wis. Aug. 2, 2006) ...................................................................................... 6
*Fries v. Helsper*, 146 F.3d 452 (7th Cir.1998).............................................................................. 6
*Glanton v. DirecTV, LLC*, 172 F.Supp.3d 890 (D.S.C. 2016).................................................. 9, 12
*Goldfinger v. J. Commc'ns Inc.*, No. 15-C-12, 2015 WL 13034986 (E.D. Wis. Aug. 4, 2015) .... 7
*In re Meier*, 223 F.R.D. 514 (W.D. Wis. 2004)........................................................................ 7, 8
*Jones v. Continental Corp.*, 789 F.2d 1225 (6th Cir. 1986) .......................................................... 8
*Kotsilieris v. Chalmers*, 966 F.2d 1181 (7th Cir.1992) ................................................................ 8
*National Wrecking Co. v. International Broth. of Teamsters, Local 731*, 990 F.2d 957 (7th Cir. 1993) ............................................................................................................................................ 7
*Oliveri v. Thompson*, 803 F.2d 1265 (2d Cir. 1986).................................................................... 8
*Perrill v. Equifax Info. Servs., LLC*, 205 F. Supp. 3d 869 (W.D. Tex. 2016) .......................... 9, 12
*Puncochar v. Revenue Mgmt. of Illinois Corp.*, No. 15-CV-07089, 2017 WL 1208426 (N.D. Ill. Mar. 31, 2017).............................................................................................................................. 6
*Rogers v. Wells Fargo Bank, N.A.*, 2020 WL 1081721 (N.D. Ill. 2020) ....................................... 9
*Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47 (2007)...................................................................... 8
*Szabo Food Serv., Inc. v. Canteen Corp.*, 823 F.2d 1073 (7th Cir. 1987).................................... 7
*Turner v. Sungard Business Systems, Inc.*, 91 F.3d 1418 (11th Cir. 1996). ................................. 7
*Wyche v. Kuchinsky*, 3:16-cv-114, 2017 WL 2222376 (E.D. Va. May 19, 2017)............. 9, 10, 12

**Statutes**

15 U.S.C. § 1681(b) ........................................................................................................................ 8
15 U.S.C. § 1681, *et seq.*........................................................................................................... 1, 2
15 U.S.C. § 1681a(d) ..................................................................................................................... 9
15 U.S.C. § 1681b(f) .................................................................................................................... 12
15 U.S.C. § 1681b(f)(1) ................................................................................................................. 9
15 U.S.C. § 1681e(a)..................................................................................................................... 10
28 U.S.C. § 1927........................................................................................................................ 5, 7
Wis. Stat. Ann. § 218.02 ......................................................................................................... 10, 11

Wis. Stat. Ann. § 422.501 ............................................................................................. 10, 11
Wisconsin Consumer Act, Ch. 421-427 ........................................................................ 1, 2

**Rules**

Fed. R. Civ. P. 11 .................................................................................................................. 7
Fed. R. Civ. P. 11(b) ........................................................................................................ 5, 6

**I.      INTRODUCTION**

Plaintiff filed claims against DRD under the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA") and the Wisconsin Consumer Act, Ch. 421-427. (Doc. 37). Plaintiff, Plaintiff's Counsel, and Plaintiff's Law Firm assert these claims with no basis in fact from which to allege that DRD violated the law. Further, Plaintiff and her attorneys have continued to abuse the legal process and waste this Court's, as well as Defendant's, time and resources to continue the prosecution of this Action. Not only did Plaintiff's lawsuit have no basis in its beginning, Plaintiff continues to assert her claims and extending this case after extensive discovery has revealed that there remains no colorable claim to pursue. Such egregious conduct is exactly the sort of conduct that Rule 11 was designed to deter. Plaintiff, Plaintiff's Counsel, and Plaintiff's Law Firm must be sanctioned.

**II.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

   **A.     Plaintiff's Claims**

Plaintiff received a letter from DRD dated July 30, 2020 ("the Letter"). (Doc. 37 at ¶¶ 24, 28; Doc. 16-1). The Letter provided a phone number and invited Plaintiff to call regarding a referral to debt relief services companies. (Doc. 37 at ¶ 26; Doc. 16-1). The Letter then provided an example scenario:

> **PROGRAM EXAMPLE**
> Est. Creditor Balances: $17,500.00
> Est. Settlement Amount: $7,875.00
> Proposed Program Payment: $218.75
> Program Terms: 12-36 Months

(Doc. 37 at ¶ 27; Doc. 16-1). The Letter also contained the following disclaimer:

1

> Reduction balances are for illustrative purposes only and are an estimate and are solely to demonstrate a typical debt situation. Actual debt and savings are dependent on clients' unique financial circumstances. Prior results do not guarantee a similar outcome. We are not a lender, creditor, or a collector. Any persons can opt out by calling the number above. This is not an engagement offer, only an invitation to speak with a representative to determine interest and qualification. Not available in all states. Requires program completion. Program fees are separate and not included in example.

(Doc. 16-1).

On January 19, 2022, Plaintiff filed her Second Amended Class Action Complaint. (Doc. 37). Plaintiff filed claims against DRD under the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA") and the Wisconsin Consumer Act, Ch. 421-427. (Doc. 37). Plaintiff alleges that DRD and Redstone sent her the Letter "because her name and address were included on a list of consumers provided for sale to Redstone by TDS, who in turn contracts with DRD to send letters in the form of Exhibit A on behalf of DRD based on an order from DRD to send such letters to consumers within a particular geographic area whose credit history meet certain criteria, including, but not limited to consumers who: (i) have an estimated debt in excess of a certain threshold, and (ii) have made minimum payments on credit accounts for several months but the balance of those accounts was not decreasing because of the accrual of interest at high rates." (Doc. 37 at ¶ 28). Plaintiff alleges that "[i]nformation about Plaintiff's credit history is not public information and Plaintiff did not authorize Defendants to obtain her credit history." (Doc. 37 at ¶ 29). Plaintiff also alleges that her "name and address appeared on a 'pre-screened list' that included similarly situated consumers within a particular geographic area and whose credit history met certain criteria.'" (Doc. 37 at ¶ 30).

Plaintiff alleges that the FCRA authorizes the sale and use of credit information to to obtain credit reports only in connection with firm offers of credit or insurance," and that the Letter was not a firm offer. (Doc. 37 at ¶¶ 31-35). Plaintiff asserts that DRD willfully obtained and used a consumer report from TDS regarding Plaintiff under false pretenses and without a

2

permissible purpose in violation of the FCRA, 15 U.S.C. §§ 1681b, 1681e, and 1681q. (Doc. 37 at ¶¶ 36-37, 68-70).

Plaintiff also alleges that DRD was not licensed as an Adjustment Services Company by the Wisconsin Department of Financial Institutions ("DFI") and has not registered as a Credit Services Organization with the DFI in violation of Wis. Stat. § 422.502(1). (Doc. 37 at ¶¶ 38, 44-47, 65, 72-77).

Plaintiff has admitted that she did not have any credit reports that she obtained from TransUnion, Equifax, Experian, or any other credit reporting agency since July 30, 2020 that she believed reflected any credit inquiry by DRD or anyone on its behalf regarding Plaintiff. (*See* Perr Decl., ¶ 3, Exhibit 2, No. 6). Plaintiff did not produce any credit reports in discovery this case. (*See id.*, ¶ 4, Exhibit 3). Plaintiff has admitted that she has not obtained a copy of her credit report. (*Id.*, ¶ 5, attached as Exhibit 4. No. 22). If Plaintiff never obtained or viewed or credit report, then it is clear she had no factual basis at all to file a lawsuit against DRD. If she never saw a credit report, she could not see that her credit was pulled. Her claims therefore had no reasonable basis in fact, and the conduct of Plaintiff and Plaintiff's Counsel and Plaintiff's Law Firm for the initiation of suit should be sanctioned.

Even if there were a reasonable basis in fact in Plaintiff's filing of her original Complaint and subsequent Amended Complaints, extensive discovery in this case has further revealed not only that Plaintiff never accessed her credit report, but that DRD and its associated vendors do not access credit reports as part of its business operation.

**B.     DRD Does Not Obtain any Credit Reports**

DRD is a company that seeks to generate referrals of consumers to third parties who offer debt relief services by using direct mail. (*Id.*, ¶ 6, Exhibit 5 at ¶ 5). DRD does not assemble or

evaluate consumer credit information or other information on consumers for the purpose of furnishing consumers reports to third parties. (*See id.,* ¶ 6, Exhibit 5 at ¶ 7).

DRD is not a Consumer Reporting Agency. (*See id.*, ¶ 6, Exhibit 5 at ¶ 6). DRD does not enter into any credit transactions with individuals or businesses. (*See id.*, ¶ 6, Exhibit 5 at ¶ 8). DRD does not extend credit to any individuals or businesses. (*See id.*, ¶ 6, Exhibit 5 at ¶ 9). DRD does not use any consumer data it obtains for employment purposes. (*See id.*, ¶ 6, Exhibit 5 at ¶ 10). DRD does not use any data it obtains to determine an individual's eligibility for a license or other benefit granted by a governmental instrumentality required by law to consider an applicant's financial responsibility or status. (*See id.*, ¶ 6, Exhibit 5 at ¶ 12).

DRD does not use any data it obtains, as a potential investor or servicer, or current insurer, in connection with a valuation of, or an assessment of the credit or prepayment risks associated with, an existing credit obligation. (*See id.*, ¶ 6, Exhibit 5 at ¶ 13). DRD does not use any data it obtains in connection with a business transaction that is initiated by an individual or to review an account to determine whether an individual continues to meet the terms of the account. (*See id.*, ¶ 6, Exhibit 5 at ¶ 14).

DRD engages Redstone Print & Mail, Inc., ("Redstone") for the purpose of compiling marketing letters to be sent to individuals regarding debt relief services provided by DRD's clients. (*See id.*, ¶ 6, Exhibit 5 at ¶ 16). Redstone designs, prints, and mails DRD's marketing letters. (*See id.*, ¶ 6, Exhibit 5 at ¶ 16). In 2020, DRD asked Redstone to obtain a prospect list of certain individuals' names and addresses for the purpose of DRD's marketing efforts. (*See id.*, ¶ 6, Exhibit 5 at ¶ 20). DRD never requires that Redstone utilize a consumer report, a credit report, or a "pre-screened list" in connection with obtaining a prospect list for DRD. (*See id.*, ¶ 6, Exhibit 5 at ¶ 19).

It is DRD's understanding that Redstone asks a company called The Data Suite ("TDS") to compile prospect lists for DRD. (*See id.*, ¶ 6, Exhibit 5 at ¶ 17). It is DRD's understanding that Redstone only utilizes TDS for compiling prospect lists. (*See id.*, ¶ 6, Exhibit 5 at ¶ 17). None of the information upon which the prospect lists DRD purchases from Redstone, including the list that contained Plaintiff's information, is taken from any credit report or is based on any data contained in a credit report. (*See* Perr Decl., ¶ 7, Exhibit 6 at ¶¶ 21-25). The consumer data was pulled from data from public sources. (*See id.*, ¶ 7, Exhibit 6 at ¶ 22). These include, for example, obtaining information related to mortgages, demographic information, and information from surveys completed by consumers. (*See id.*, ¶ 7, Exhibit 6 at ¶ 22). The prospect lists are not compiled using any credit reports or information pulled from credit reports. (*See id.*, ¶ 7, Exhibit 6 at ¶ 25). TDS never pulled or accessed Plaintiff's credit report or credit history, nor did it nor has it ever provided any sensitive credit data of any individual to DRD (or to Redstone on behalf of DRD), such as a "prescreened" list. (*See id.*, ¶ 7, Exhibit 6 at ¶ 25; ¶ 6, Exhibit 5 at ¶¶ 18-19).

Plaintiff's claims are completely frivolous, and this Court should deter Plaintiff, Plaintiff's Counsel, and Plaintiff's Law Firm from pursuing this harassing litigation further. As such, sanctions are warranted at this time pursuant to Fed. R. Civ. P. 11(b) and 28 U.S.C. § 1927.

## II. LEGAL ARGUMENT

### A. <u>Standard for Sanctions</u>

Fed. R. Civ. P. 11(b) provides as follows:

> Representations to Court. By presenting to the court a pleading, written motion, or other paper – whether by signing, filing, submitting, or later advocating it – an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1)  it is not **being presented for any improper purpose**, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) **the claims, defenses, and other legal contentions are warranted by existing law** or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b) (emphasis added).

"The central goal of Rule 11 is to deter abusive litigation practices." *Puncochar v. Revenue Mgmt. of Illinois Corp.*, No. 15-CV-07089, 2017 WL 1208426, at *2 (N.D. Ill. Mar. 31, 2017) (quoting *Corley v. Rosewood Care Ctr., Inc. of Peoria*, 388 F.3d 990, 1013 (7th Cir. 2004)). "Specifically, Rule 11 requires that an attorney and/or party certify to the best of their 'knowledge, information, and belief, formed after an inquiry reasonable under the circumstances' that any pleading or motion presented to the court is not being presented for an improper purpose and that the allegations and other factual contentions have a legally sufficient basis to support the claim" *Fries v. Helsper*, 146 F.3d 452, 458 (7th Cir.1998). "When the certification is shown to be false, Rule 11(c) permits the imposition of monetary sanctions." *Dr. R.C. Samanta Roy Inst. of Sci. & Tech., Inc. v. Lee Enterprises, Inc.*, No. 05 C 0423, 2006 WL 3692361, at *2 (E.D. Wis. Aug. 2, 2006).

The Seventh Circuit has set forth the following Rule 11(b) criteria: "[t]here must be 'reasonable inquiry' into both fact and law; there must be good faith (that is, the paper may not be interposed 'to harass'); the legal theory must be objectively 'warranted by existing law or a good faith argument' for the modification of existing law; and the lawyer must believe that the complaint is 'well-grounded in fact.'" *Goldfinger v. J. Commc'ns Inc.*, No. 15-C-12, 2015 WL 13034986, at

*2 (E.D. Wis. Aug. 4, 2015) (quoting *Szabo Food Serv., Inc. v. Canteen Corp.*, 823 F.2d 1073, 1080 (7th Cir. 1987)).

"Rule 11 is violated when a party or party's counsel signs a paper that, 'after reasonable inquiry, is not well grounded in fact and is not warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law.'" *In re Meier*, 223 F.R.D. 514, 517–18 (W.D. Wis. 2004) (quoting *Burda v. M. Ecker Co.*, 2 F.3d 769, 773–74 (7th Cir. 1993)). "To find a Rule 11 violation, a court must make an objective inquiry to determine whether the petitioner 'should have [known] that his position is groundless.'" *Id.* (quoting *Chicago Newspaper Publishers' Ass'n v. Chicago Web Printing Pressmen's Union No. 7*, 821 F.2d 390, 397 (7th Cir. 1987)). "The inquiry under Rule 11 is objective; there is no need to find that the petitioner acted in bad faith." *Id.* (quoting *National Wrecking Co. v. International Broth. of Teamsters, Local 731*, 990 F.2d 957, 963 (7th Cir. 1993)).

"Rule 11 subjects a party to potential sanctions if the party continues to insist upon a position or argument after it is 'no longer tenable.'" *Id.* (citing Fed. R. Civ. P. 11 and 1993 Amendment Advisory Committees Note). Even if a pleading complies with Rule 11 when it is initially signed, information that subsequently comes to the attention of counsel may demonstrate that a claim or contention is no longer viable. *Turner v. Sungard Business Systems, Inc.*, 91 F.3d 1418, 1421 (11th Cir. 1996).

Title 28 U.S.C § 1927 provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof **who so multiplies the proceedings in any case unreasonably and vexatiously** may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927 (emphasis added).

Under 28 U.S.C. § 1927, an attorney who "so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." "As with a Rule 11 sanction, district courts have broad discretion in deciding upon a sanction award under § 1927." *In re Meier*, 223 F.R.D. at 520 (citing *Kotsilieris v. Chalmers*, 966 F.2d 1181, 1187–88 (7th Cir.1992) (applying Rule 11 standard to § 1927 sanction)). "Under Rule 11, sanctions are imposed in proportion to the egregiousness of the act." *Id.* This same principle also applies to sanctions under § 1927." *Id.* Fees may be assessed without a finding of bad faith, "at least when an attorney knows or reasonably should know that a claim pursued is frivolous, or that his or her litigation tactics will needlessly obstruct the litigation of nonfrivolous claims[.]" *Jones v. Continental Corp.*, 789 F.2d 1225, 1230 (6th Cir. 1986).

An award of expenses under Section 1927 is proper "when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." *Oliveri v. Thompson*, 803 F.2d 1265, 1273-74 (2d Cir. 1986). Sanctions are to be imposed when, from an objective standpoint, counsel's conduct has multiplied proceedings and in doing so, has been unreasonable and vexatious, in a sense of being harassing or annoying. *Cruz v. Savage*, 896 F.2d 626, 631 (1st Cir. 1990).

### B. Plaintiff's FCRA Claims are Frivolous.

#### 1. Legal Standard – A Consumer Report Must Have Been Pulled for a Claim under Section 1681(b)

Congress enacted the FCRA "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007); *see also* 15 U.S.C. § 1681(b). The Act provides that a "person shall not use or obtain a consumer report for any purpose unless . . . the consumer report is obtained for a

8

purpose for which the consumer report is authorized to be furnished under this section." *Billups v. PHH Mortg. Corp.*, No. 19 C 7873, 2021 WL 1648114, at *2 (N.D. Ill. Apr. 27, 2021) (emphasis added); *see* 15 U.S.C. § 1681b(f)(1). The FCRA defines a "consumer report" as follows:

> (1) In general
> The term 'consumer report' means any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for—
>
> (A) credit or insurance to be used primarily for personal, family, or household purposes;
> (B) employment purposes; or
> (C) any other purpose authorized under section 1681b of this title.

15 U.S.C. § 1681a(d).

"Section 1681b(a) authorizes credit agencies to furnish credit reports for certain specifically enumerated purposes – and only those purposes." *Rogers v. Wells Fargo Bank, N.A.*, 2020 WL 1081721, at *3 (N.D. Ill. 2020) (emphasis added). Courts have consistently held that the elements of a claim under 15 U.S.C. § 1681b(f) include the following: (1) "**there was a consumer report**; (2) **obtained or used by the defendant**; (3) without a permissible purpose as defined in § 1681b(a)(1)-(6); and (4) the defendant acted with the specified mental state." *Alston v. Freedom Plus/Cross River*, No. CV TDC-17-0033, 2018 WL 770384, at *4 (D. Md. Feb. 7, 2018) (emphasis added); *see also Wyche v. Kuchinsky*, 3:16-cv-114, 2017 WL 2222376, at *7 (E.D. Va. May 19, 2017); *Cole v. Capital One*, 15-1121, 2016 WL 2621950, at *4 (D. Md. May 5, 2016); *Glanton v. DirecTV, LLC*, 172 F.Supp.3d 890, 894 (D.S.C. 2016); *Perrill v. Equifax Info. Servs., LLC*, 205 F. Supp. 3d 869, 876 (W.D. Tex. 2016).

9

### 2. A CRA Must Maintain Reasonable Procedures to Limit the Furnishing of Reports

Section 1681e of the FCRA requires that consumer reporting agencies ("CRAs") maintain "reasonable procedures designed to . . . limit the furnishing of consumer reports to the purposes listed under section 1681b of this title." 15 U.S.C. § 1681e(a). These procedures require the following:

> [p]rospective users of the information identify themselves, certify the purposes for which the information is sought, and certify that the information will be used for no other purpose. Every consumer reporting agency shall make a reasonable effort to verify the identity of a new prospective user and the uses certified by such prospective user prior to furnishing such user a consumer report. No consumer reporting agency may furnish a consumer report to any person if it has reasonable grounds for believing that the consumer report will not be used for a purpose listed in section 1681b of this title.

*Id.* In order to show that a defendant violated the "reasonable procedures" requirement of Section 1681e(a), a consumer "'must first show that the reporting agency released the report in violation of § 1681b.'" *Wyche*, 2017 WL 2222376, at *6 (quoting *Alston v. Branch Banking & Trust Co.*, No. 15–3100, 2016 WL 4521651, at *8 (D. Md. Aug. 26, 2016)); *see Aleksic v. Experian Info. Solutions, Inc.*, No. 13 C 7802, 2014 WL 2769122, at *1 (N.D. Ill. June 18, 2014) (stating requirements under Section 1681e(a)).

### 3. DRD Did Not Violate Wisconsin Law

DRD is not an Adjustment Service Company nor a Credit Services Organization under the Wisconsin Consumer Act, and therefore is not required to be licensed or registered as such. Wis. Stat. Ann. § 218.02; Wis. Stat. Ann. § 422.501.

An Adjustment Services Company is defined as a company that is "engaged as principal in the business of prorating the income of a debtor to the debtor's creditor or creditors, or of assuming the obligations of any debtor by purchasing the accounts the debtor may have with the

10

debtor's several creditors, in return for which the principal receives a service charge or other consideration." Wis. Stat. Ann. § 218.02.   A "Credit services organization" means a person or merchant who, with respect to the extension of credit by others, sells, provides or performs, or represents that the person will sell, provide or perform, any of the following services in return for the payment of money or for other valuable consideration: (1) improving a buyer's credit record, credit history or credit rating; (2) arranging for or obtaining an extension of credit for a buyer; or (3) providing advice or assistance to a buyer with regard to subsections 1 or 2.  Wis. Stat. Ann. § 422.501.  DRD has stated in discovery that it engages in none of the aforementioned conduct.

DRD is a company that seeks to generate referrals of consumers to third parties who offer debt relief services by using direct mail. (*See* Perr Decl., ¶ 6, Exhibit 5 at ¶ 5).  DRD does not assemble or evaluate consumer credit information or other information on consumers for the purpose of furnishing consumers reports to third parties. (*See id*., ¶ 6, Exhibit 5 at ¶ 7).  DRD does not use any data it obtains to determine an individual's eligibility for a license or other benefit granted by a governmental instrumentality required by law to consider an applicant's financial responsibility or status.  (*See id*., ¶ 6, Exhibit 5 at ¶ 12).  DRD does not use any data it obtains, as a potential investor or servicer, or current insurer, in connection with a valuation of, or an assessment of the credit or prepayment risks associated with, an existing credit obligation. (*See id*., ¶ 6, Exhibit 5 at ¶ 13).  DRD does not use any data it obtains in connection with a business transaction that is initiated by an individual or to review an account to determine whether an individual continues to meet the terms of the account. (*See id*., ¶ 6, Exhibit 5 at ¶ 14).  Therefore, DRD is not required to be licensed or registered under the Wisconsin Consumer Act.

    **4.**    **Plaintiff Filed her Claim without Evidence to Support her Claims**

Plaintiff does not have any evidence other than speculation that DRD obtained Plaintiff's credit history. Plaintiff is required under Section 1681b(f) to show that DRD obtained or accessed her credit history. 15 U.S.C. § 1681b(f); *Alston*, 2018 WL 770384; *Wyche*, 2017 WL 2222376, at *7; *Cole*, 2016 WL 2621950; *Glanton*, 172 F.Supp.3d at 894; *Perrill*, 205 F. Supp. 3d at 876. If DRD did obtain or access her credit, this would be noted on the credit report as an inquiry. Plaintiff has absolutely failed to produce a copy of her credit report and has admitted that she has never even seen or obtained a copy of her credit report. (*See* Perr Decl., ¶¶ 3-4. Exhibits 2-3). Without her credit report, there is zero evidence to support Plaintiff's frivolous claim that DRD actually accessed or obtained her credit history. (*See id.*, ¶¶ 3-4, Exhibits 2-3). Simply, Plaintiff, Plaintiff's Counsel, and Plaintiff's Law Firm filed a claim without any basis in fact when such evidence was readily obtainable and so central to her case. The filing of this lawsuit by her, and her attorneys without obtaining or reviewing her actual credit report was without reasonable basis and should be sanctioned by this Court.

**5.     Plaintiff Continues to Prosecute her Claim Despite Producing or Finding No Evidence to Support her Claims**

Even if there was a reasonable basis for Plaintiff's claims, Plaintiff's continued prosecution of her claim under Section 1681b is frivolous as there is no evidence that shows DRD pulled her credit history. Such conduct is so egregious so as to compel this Court to issues sanctions against Plaintiff, Plaintiff's Counsel, and Plaintiff's Law Firm. Defendant's Discovery Responses, Plaintiff's Discovery Responses, and two declarations have supported the present facts that DRD did not pull Plaintiff's credit history. DRD does not assemble or evaluate consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties. (*Id*., ¶ 6, Exhibit 5 at ¶ 7). DRD is not a Consumer Reporting Agency. (*See id*., ¶ 6, Exhibit 5 at ¶ 6). DRD does not enter into any credit transactions with individuals or businesses.

(*See id.*, ¶ 6, Exhibit 5 at ¶ 8). DRD does not extend credit to any individuals or businesses. (*See id.*, ¶ 6, Exhibit 5 at ¶ 9). DRD does not use any consumer data it obtains for employment purposes. (*See id.*, ¶ 6, Exhibit 5 at ¶ 10). DRD does not use any data it obtains to determine an individual's eligibility for a license or other benefit granted by a governmental instrumentality required by law to consider an applicant's financial responsibility or status. (*See id.*, ¶ 6, Exhibit 5 at ¶ 12).

It is DRD's understanding that Redstone asks a company called The Data Suite ("TDS") to compile prospect lists for DRD. (*See id.*, ¶ 6, Exhibit 5 at ¶ 17). It is DRD's understanding that Redstone only utilizes TDS for compiling prospect lists. (*See id.*, ¶ 6, Exhibit 5 at ¶ 17). It is DRD's understanding that TDS does not compile any prospect list for DRD using any, credit reports, "pre-screened list," or information pulled from consumer reports or credit reports. (*See id.*, ¶ 6, Exhibit 5 at ¶ 18). DRD has never asked Redstone, TDS or any other entity to pull any consumer report, credit report, or "pre-screened list" in connection with obtaining a prospect list. (*See id.*, ¶ 6, Exhibit 5 at ¶ 18). DRD never requires that Redstone utilize a consumer report, a credit report, or a "pre-screened list" in connection with obtaining a prospect list for DRD. (*See id.*, ¶ 6, Exhibit 5 at ¶ 19). DRD never pulled or accessed Plaintiff's credit report or credit history (*See id.*, ¶ 6, Exhibit 5 at ¶ 22).

TDS only pulled consumer data from public sources, including obtaining information related to mortgages, demographic information, and information from surveys completed by consumers. (*See id.*, ¶ 7, Exhibit 6 at ¶ 22). TDS provided Redstone a list of individuals who might be active credit card users and could be assumed to carry debt for the purposes of DRD's marketing efforts. (*See id.*, ¶ 7, Exhibit 6 at ¶ 20). This includes the list that DRD obtained which had Plaintiff's information. (*See id.*, ¶ 7, Exhibit 6 at ¶¶ 21-25). TDS never pulled or accessed Plaintiff's credit report or credit history, nor did it nor has it ever provided any sensitive credit data

13

of any individual to DRD (or to Redstone on behalf of DRD), such as a "prescreened" list. (*See id.*, ¶ 7, Exhibit 6 at ¶ 25; ¶ 6, Exhibit 5 at ¶¶ 18-19). There can be no violation of Section 1681b or Section 1681e if Defendant never obtained or accessed Plaintiff's credit report. Plaintiff, Plaintiff's Counsel, and Plaintiff's Law Firm had no factual basis to file this claim, and after extensive investigation and more than a reasonable opportunity to take discovery continue to prosecute this claim. Continuing to do so without any basis in fact is behavior Rule 11 was designed to deter, and the Court should impose the sanctions sufficient to deter this conduct.

### III.  CONCLUSION

For the foregoing reasons, Defendant Debt Resolution Direct, LLC d/b/a Debt Advisors of America respectfully moves this Court to impose monetary sanctions against Plaintiff, Mary McGalloway, Plaintiff's Counsel, and Plaintiff's Law Firm pursuant to Fed. R. Civ. P. 11(b) and 28 U.S.C. § 1927, including awarding Defendant its attorney's fees and costs incurred in defending against Plaintiff's claims.

Respectfully Submitted:

**KAUFMAN, DOLOWICH & VOLUCK, LLP**

By:   /s/ Richard J. Perr
Richard J. Perr, Esquire
Four Penn Center
1600 John F. Kennedy Blvd., Suite 1030
Philadelphia, PA  19103
(v) 215-501-7002; (f) 215-405-2973
rperr@kdvlaw.com

Attorney for Defendant Debt Resolution Direct,
LLC d/b/a Debt Advisors of America

Dated:  August 4, 2022

14

Case 2:20-cv-01740-SCD   Filed 08/04/22   Page 19 of 20   Document 56

## CERTIFICATE OF SERVICE

    I, RICHARD J. PERR, ESQUIRE hereby certify that on this date I served a true and correct copy of the foregoing via CM/ECF on the following:

Ben James Slatky, Esquire
Jesse Fruchter, Esquire
John D. Blythin, Esquire
Ademi LLP
3620 E. Layton Avenue
Cudahy, WI 53110
bslatky@ademilaw.com; jfruchter@ademilaw.com; jblythin@ademilaw.com;
Attorneys for Plaintiff

                                    /s/ Richard J. Perr_____
                                    RICHARD J. PERR, ESQUIRE

Dated:   August 4, 2022

4864-7532-6509, v. 1